IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERELL PRUITT, RONALD PETERSON, PAUL FLANAGAN, PLAZ HALL MURDOCK-ALEXANDER, JR. and JASMINE COX, on behalf of themselves and other similarly situated laborers, <br><br> Plaintiffs, <br><br> v. <br><br> PERSONNEL STAFFING GROUP, LLC d/b/a MVP, THE SEGERDAHL CORP., VISUAL PAK COMPANY, MEDLINE INDUSTRIES, INC., GEORGIA NUT COMPANY, C&D RECYCLING, LLC and METROPOLITAN GRAPHICS ARTS, INC., <br><br> Defendants. | Case No. <br><br> Judge <br><br> Magistrate Judge |

## CLASS ACTION COMPLAINT

Plaintiffs Derell Pruitt, Ronald Peterson, Paul Flanagan Plaz Hall Murdock-Alexander, Jr. and Jasmine Cox ("Plaintiffs"), on behalf of themselves and all other similarly situated laborers, for their Complaint against Personnel Staffing Group, LLC d/b/a MVP ("MVP"), The Segerdahl Corp. ("Segerdahl"), Visual Pak Company ("Visual Pak"), Medline Industries, Inc. ("Medline"), Georgia Nut Company ("Georgia Nut"), C&D Recycling, LLC ("C&D") and Metropolitan Graphic Arts, Inc. ("MGA") (collectively "Defendants"), state as follows:

## I.      INTRODUCTION

1.      This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section § 1981"), for Defendants' discrimination against African-American laborers in their practices in making assignments to work. MVP is a temporary staffing agency that assigns temporary laborers in its labor pool to its third party client companies for a fee, including to Defendants Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA

("Defendant Client Companies"). Since May of 2012, Plaintiffs have sought work assignments from MVP to MVP's client companies, including the Defendant Client Companies, but on one or more occasions were not assigned to one or more of MVP's client companies, including the Defendant Client Companies, because of their race as African-Americans.

2.     Plaintiffs will seek to certify a class pursuant to Federal Rule Civil Procedure 23(a) and (b) to pursue their Title VII and their § 1981 claims on behalf of themselves and similarly situated African-American laborers. This Complaint names MVP and the Defendant Client Companies, with whom MVP bears joint responsibility, for the pattern or practice of excluding or severely restricting job assignments for African-American laborers. As all referrals for employment at issue in this action were made to Defendant Client Companies by Defendant MVP through its office in Waukegan, Illinois, the claims encompassed by this action warrant certification as a class action, with separate subclasses for each Defendant Client Company.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiffs' Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981.

4.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendants maintained their offices and transacted business within this jurisdiction.

5.     On March 16, 2015, Plaintiff Pruitt filed charges of discrimination against MVP, Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA. Between February 8, 2016 and April 11, 2016, the EEOC issued Notices of the Right to Sue to Mr. Pruitt, attached hereto as Group Exhibit A.

6.      On March 16 and 17, 2015, Plaintiff Peterson filed charges of discrimination against MVP, Segerdahl, Visual Pak and MGA. Between February 16, 2016 and April 6, 2016, the EEOC issued Notices of the Right to Sue to Mr. Peterson, attached hereto as Group Exhibit B.

7.      On March 31, 2015 and April 29, 2015, Plaintiff Murdock-Alexander, Jr. filed charges of discrimination against MVP, Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA. Between February 8, 2016 and April 11, 2016, the EEOC issued Notices of the Right to Sue to Murdock-Alexander, Jr., attached hereto as Group Exhibit C.

8.      On March 16, 2015, Plaintiff Flanagan filed charges of discrimination against MVP, Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA. Between February 8, 2016 and April 11, 2016, the EEOC issued Notices of the Right to Sue to Mr. Flanagan, attached hereto as Group Exhibit D.

9.      On March 16, 2015, Plaintiff Cox filed charges of discrimination against MVP, Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA. Between February 8, 2016 and April 11, 2016, the EEOC issued Notices of the Right to Sue to Ms. Cox, attached hereto as Group Exhibit E.

10.      On April 30, 2015, Plaintiff Cox filed charges of discrimination against MVP, Segerdahl, Visual Pak, Medline, Georgia Nut, C&D and MGA. Between February 8, 2016 and April 11, 2016, the EEOC issued Notices of the Right to Sue to Mr. Pruitt, attached hereto as Group Exhibit E.

11.      The case is timely filed.

III.     PARTIES

A.     <u>**Plaintiffs**</u>

12.     Plaintiff Derell Pruitt:

    a.     is African American and resides in this judicial district;

    b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.     is and, at all relevant times, has been a "job applicant" at each of the Defendant Client Companies through MVP; and

    e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

13.     Plaintiff Ronald Peterson:

    a.     is African American and resides in this judicial district;

    b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.     is and, at all relevant times, has been a "job applicant" at each of the Defendant Client Companies through MVP; and

    e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

14.     Plaintiff Paul Flanagan:

    a.     is African American and resides in this judicial district;

    b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.     is and, at all relevant times, has been a "job applicant" at each of the Defendant Client Companies through MVP; and

    e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

15.     Plaintiff Plaz Hall Murdock-Alexander, Jr.:

    a.     is African American and resides in this judicial district;

    b.     is and, at all relevant times, has been qualified to perform work for MVP;

    c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

    d.     is and, at all relevant times, has been a "job applicant" at each of the Defendant Client Companies through MVP; and

    e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

16.     Plaintiff Jasmine Cox:

    a.     is African American and resides in this judicial district;

b.     is and, at all relevant times, has been qualified to perform work for MVP;

c.     is and, at all relevant times, has been qualified to perform work for many of MVP's client companies, including each of the Defendant Client Companies;

d.     is and, at all relevant times, has been a "job applicant" at each of the Defendant Client Companies through MVP; and

e.     is and, at all relevant times, has been a laborer seeking work assignments from MVP at MVP's client companies, including each of the Defendant Client Companies.

**B.     <u>Defendants</u>**

17.     At all relevant times, Defendant MVP:

a.     has been a corporation organized under the laws of the State of Florida;

b.     has been located in and conducted business in Illinois and within this judicial district;

c.     has been an "employment agency" as that term is defined by 42 U.S.C. § 2000e(c);

d.     has been a day and temporary labor service agency as defined by the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq*.; and

e.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c).

18.     At all relevant times, Defendant Segerdahl:

a.     has been a corporation organized under the laws of the State of Illinois;

6

     b.     has been located in and conducted business in Illinois and within this judicial district; and

     c.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

19.     At all relevant times, Defendant Visual Pak:

     a.     has been a corporation organized under the laws of the State of Illinois;

     b.     has been located in and conducted business in Illinois and within this judicial district; and

     c.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

20.     At all relevant times, Defendant Medline:

     a.     has been a corporation organized under the laws of the State of Illinois;

     b.     has been located in and conducted business in Illinois and within this judicial district; and

     c.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

21.     At all relevant times, Defendant Georgia Nut:

     a.     has been a corporation organized under the laws of the State of Delaware;

     b.     has been located in and conducted business in Illinois and within this judicial district; and

     c.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

22.     At all relevant times, Defendant C&D:

     a.     has been a corporation organized under the laws of the State of Illinois;

    b.    has been located in and conducted business in Illinois and within this judicial district; and

    c.    has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

23.    At all relevant times, Defendant and MGA:

    a.    has been a corporation organized under the laws of the State of Illinois;

    b.    has been located in and conducted business in Illinois and within this judicial district; and

    c.    has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b) and 42 U.S.C. § 1981(c);

## IV.    FACTUAL BACKGROUND

24.    At all relevant times, MVP has operated as an employment agency with a branch office located in Waukegan, Illinois ("MVP Waukegan Branch Office").

25.    MVP is in the business of providing third-party client companies, including the Defendant Client Companies, with low- and moderately-skilled laborers to fill jobs on a daily basis.

26.    MVP acts as an agent of the Defendant Client Companies in recruiting, training, assigning and paying laborers to work at the Defendant Client Companies.

27.    MVP acts as a joint employer with the Defendant Client Companies in the assignment of laborers to work at the Defendant Client Companies.

28.    As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders. When a laborer seeks an assignment through MVP, such laborers are seeking to fill a daily job at any of the third-party client companies to which MVP supplies labor, including the Defendant Client Companies.

29.     MVP publicizes the types of jobs to which it refers laborers through newspaper advertising, and MVP recruiters, including MVP dispatchers and drivers. The majority of the MVP Waukegan Branch Office's recruitment efforts are made in predominantly Hispanic neighborhoods and the paid advertisements are only placed in Spanish-language publications in the Waukegan area.

30.     MVP permits individuals who walk into its MVP Waukegan Branch Office to seek work assignments.

31.     Individuals are referred for employment in the MVP Waukegan Branch Office, regardless of whether they request to be referred to a particular employer.

32.     When an individual comes to the MVP Waukegan Branch Office seeking a work assignment, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that s/he will be contacted when a daily job becomes open to which s/he can be referred.

33.     The jobs for which the MVP Waukegan Branch Office refers candidates, including at the Defendant Client Companies, do not require any special skills, training or qualifications.

34.     From May 2012 through the present, MVP referred for employment thousands of laborers to its client companies, including the Defendant Client Companies.

35.     During the period of May 2012 to the present, each of the Named Plaintiffs sought work at MVP's Waukegan Branch Office on multiple occasions while work assignments were being made to MVP's client companies, including the Defendant Client Companies.

36.     On those occasions when the Named Plaintiffs sought work assignments at the MVP Waukegan Branch Office, they were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

37.     Other African American laborers similarly sought work assignments from MVP's Waukegan Branch Office during the period of May 2012 to the present and were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

38.     On each occasion the Named Plaintiffs came to the MVP Waukegan Branch Office to seek a work assignment, they waited in the Branch office in an attempt to receive a work assignment.

39.     During the period from May 2012 and the present, Plaintiffs observed while they were present in the Waukegan office that typically between a quarter and a third of the laborers there seeking work assignments were African American.

40.     During the period from May 2012 and the present, Plaintiffs have observed, while they were present at the Waukegan office, that many laborers who appeared Hispanic and spoke Spanish, were assigned to work while laborers who appeared to be African American were not assigned work.

41.     On many of the occasions when the Named Plaintiffs sought work at MVP's Waukegan Branch Office, they were not assigned to work even though there were assignments at MVP's client companies, including the Defendant Client Companies, for which they were qualified.

42.     Non-African American laborers received work assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers.

43.     Non-African American laborers were given assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers even though they were no more qualified to perform the job.

44.     Non-African American laborers were given assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers even though they arrived after the African American laborers.

45.     On some occasions between May 2012 and the present, MVP Dispatchers at the MVP's Waukegan Branch Office told the Named Plaintiffs that they would be called when work became available and, therefore, Plaintiffs left their contact information in order that they could be called for work assignments.

46.     The MVP Waukegan Branch Office has had a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

47.     For the period of May 2012 to the present, on many of the days when the Named Plaintiffs were not present in the MVP Waukegan Branch Office, they were available for assignments at MVP's client companies, including the Defendant Client Companies.

48.     On such days, the Named Plaintiffs were not contacted for work assignments even though there were assignments available for which they were qualified.

49.     On information, non-African American laborers were contacted for work assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers.

50.     Non-African American laborers were contacted for work assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers even though they were no more qualified to perform the job.

51.     Non-African American laborers were contacted for work assignments to MVP's client companies, including the Defendant Client Companies, before African American laborers even though they had been seeking work at MVP for less time.

52.     On multiple occasions between May 2012 and the present, MVP assigned Plaintiffs to work at various client companies and directed Plaintiffs to board MVP vans and/or busses to be transported to the Defendant Client Companies.

53.     On such occasions described in paragraph 52, *supra*, after MVP laborers were transported to the Defendant Client Companies to work, supervisors of the Defendant Client Companies selected laborers they wished to utilize to work on such occasions.

54.     On such occasions described in paragraph 53, *supra*, supervisors of the Defendant Client Companies routinely selected all of the Hispanic MVP laborers to work first, only selecting African American laborers as a last resort, even though Plaintiff and other African American laborers were equally qualified to perform the work at the Defendant Client Companies.

55.     Named Plaintiffs are and, at all relevant times, have been equally qualified to work at the MVP Waukegan Branch Office's client companies, including the Defendant Client Companies, as non-African-American laborers who sought and were given a work assignment at MVP's client companies, including the Defendant Client Companies.

56.     Other African-American laborers who sought work assignments from MVP's Waukegan branch office were likewise equally qualified to work at the client companies, including the Defendant Client Companies, of MVP's Waukegan Branch Office as Hispanic laborers who sought a work assignment from MVP's Waukegan Branch Office and were given a work assignment at MVP's client companies, including the Defendant Client Companies.

57.     MVP failed or refused to assign Named Plaintiffs to work at several of its client companies, including the Defendant Client Companies, because of their race.

58.     MVP refused to assign other similarly situated African American laborers to work at its client companies, including the Defendant Client Companies, because of their race..

59.     MVP assigned other, non-African-American laborers to work at its client companies, including the Defendant Client Companies, to fill jobs that required no special education, knowledge or experience.

60.     MVP assigned other, non-African-American laborers to work at its client companies, including the Defendant Client Companies, even though they sought work assignments after Plaintiffs and other similarly situated African American laborers.

61.     Each Defendant Client Company was aware, or should have been aware, that MVP has been engaging in a discriminatory practice of assigning almost exclusively Hispanic employees to work at its facility.

62.     Each Defendant Client Company exercised authority jointly over the choice of which laborers to assign to work at the Client Companies, when and how to discipline workers who were assigned to work at the Client Companies and the time, place, and scope of the work to be performed.

63.     Each Defendant Client Company failed to exercise reasonable care in ensuring that MVP, as an agent of each company, did not engage in discriminatory assignment practices or in other practices that limited the pool of available temporary workers in a discriminatory way.

64.     Each Defendant Client Company had the authority, and exercised that authority, to select the characteristics of laborers that MVP assigned and did not assign to work at its facility. MVP implemented the instructions provided by the Defendant Client Companies about which laborers to assign to work at the Client Companies.

65.     Each Defendant Client Company advised MVP of their preference for not having African American laborers assigned.

13

66.     Each Defendant Client Company directed MVP not to assign African American laborers to their work site.

67.     On information from former MVP dispatchers, MVP failed or refused to assign Plaintiffs and other similarly situated African-American laborers to work at the Defendant Client Companies because it was complying with a discriminatory request from each Defendant Client Company to steer African-American laborers away from its company.

68.     On information from former MVP dispatchers, MVP knew or should have known that it was steering African-Americans away from the Defendant Client Companies and towards other clients of MVP and failed to take action to stop this discriminatory conduct.

## V.      CLASS ACTION ALLEGATIONS

69.     The Plaintiffs' claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed.R.Civ.P.

70.     The Class is defined to include "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at one or more of the Defendant Client Companies at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at one of the Defendant Client Companies by MVP."

71.     In addition, separate Subclasses should be certified to include:

a.      For claims against Segerdahl ("Segerdahl Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at Segerdahl Graphics, Inc. at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at Segerdahl Graphics, Inc. by MVP."

b.    For claims against Visual Pak ("Visual Pak Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at Visual Pak Company at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at Visual Pak Company by MVP."

c.    For claims against Medline ("Medline Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at Medline Industries, Inc. at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at Medline Industries, Inc. by MVP."

d.    For claims against Georgia Nut ("Georgia Nut Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at Georgia Nut Company at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at Segerdahl Graphics, Inc. by MVP."

e.    For claims against C&D ("C&D Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at C&D Recycling, LLC at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at C&D Recycling, LLC by MVP."

      f.      For claims against MGA ("MGA Subclass"): "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at Metropolitan Graphic Arts, Inc. at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at Metropolitan Graphic Arts, Inc. by MVP."

72.     Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:

      a.     This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendants are located in this judicial district.

      b.     The class is so numerous that joinder of all members is impracticable. Defendants jointly employed thousands of individuals who sought work assignments through the Waukegan MVP Branch Office from May 9, 2012 through the present. On information and belief, there were thousands of African American laborers who sought assignments to work at the MVP Waukegan Branch Office at MVP's client companies, including the Defendant Client Companies.

      c.     One or more questions of law or fact are common to the class, including:

(i)     Whether the Defendant Client Companies have engaged in a pattern or practice of denying employment to African American laborers because of their race;

(ii)     Whether the Defendant Client Companies directed MVP to refrain from assigning African American laborers to work at the Client Companies;

(iii)    Whether MVP and the Defendant Client Companies are joint employers of the laborers assigned to work at the Client Companies;

(iv)    Whether the Defendant Client Companies failed to exercise reasonable care to prevent their agent, MVP, from engaging in discriminatory hiring practices;

(v)    Whether the choices MVP made of which laborers it assigned for work through its Waukegan office were made in conformity with directions provided by the Defendant Client Companies;

(vi)    Whether the conduct complained of herein constitutes a violation of Title VII;

(vii)    Whether the conduct complained of herein constitutes a violation of Section 1981;

(viii)    Whether injunctive relief is warranted against MVP and/or the Defendant Client Companies;

d.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel are competent and experienced in litigating discrimination and other employment class actions;

e.    The class representatives and the members of the class have been subject to, and challenge, the same practices that are being challenged by the class;

f.    Issues common to the class predominate over issues unique to individual class members and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy.

g.    Adjudication of these claims as a class action can be achieved in a manageable manner.

73.     Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**COUNT I**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant MVP**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 73 as though set forth herein.

74.     This Count arises under § 1981 for Defendant MVP's discriminatory practices in assigning laborers to several of its client companies, including the Defendant Client Companies, as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of African American laborers.

75.     Defendant MVP engaged in assignment practices that discriminated against Plaintiffs and other similarly situated African American laborers on the basis of their race, African American, as described more fully in paragraphs 24 - 68, *supra*, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

76.     As described more fully in paragraphs 24 - 68, *supra*, Defendant MVP engaged in a pattern and practice of racial discrimination against Plaintiffs and other similarly situated African American laborers based on their race as African Americans.

77.     As described more fully in paragraphs 24 - 68, *supra*, Defendant MVP's discrimination against Plaintiffs and other similarly situated laborers based on their race as African Americans was intentional.

78.     Defendant MVP failed or refused to assign African American applicants to work at the several of its client companies, including the Defendant Client Companies, in favor

18

of Hispanic employees on the basis of their race as African Americans, as described more fully in paragraphs 24 - 68, *supra*.

79.     On information from former MVP dispatchers, Defendant MVP's failure to assign Plaintiffs and other similarly situated African-American laborers to work at the Defendant Client Companies was, at least in part, because it was complying with a discriminatory request from the Defendant Client Companies to steer African American laborers away from their respective facilities in favor of Hispanic laborers.

80.     On information from former MVP dispatchers, the Defendant Client Companies' requests to MVP to steer African American laborers away from their respective companies was based on their race.

81.     Defendant MVP failed to exercise reasonable care to ensure that its agents for hiring or assigning laborers did not engage in discriminatory hiring practices.

82.     Defendant MVP's conduct in not assigning Plaintiffs and other similarly situated African American laborers to work at the Defendant Client Companies was willful and/or reckless, warranting the imposition of punitive damages.

83.     As a direct and proximate result of the willful and reckless acts or omissions of Defendants MVP alleged in paragraphs 24 - 68, *supra*, all Plaintiffs and similarly situated African-American laborers have suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B.  enjoin Defendant MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers;

C.  enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  for such other relief as this Court deems just and equitable.

**COUNT II**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Segerdahl**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 83 as though set forth herein.

84.  This Count arises under § 1981 for Segerdahl's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Segerdahl's discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

85.  As described more fully above and specifically in paragraphs 24 - 68, *supra*, Segerdahl intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

86.  Segerdahl made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Segerdahl requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Segerdahl based on their race.

87.  In the alternative, Segerdahl knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Segerdahl.

88.     Segerdahl failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

89.     Segerdahl's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

90.     As a direct and proximate result of the acts or omissions of Segerdahl and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

91.     Segerdahl and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Segerdahl Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendants MVP and Segerdahl pursuant to Rule 23;

B.  enjoin Defendants Segerdahl and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Segerdahl Subclass;

C.  enter a judgment in their favor and against Defendants Segerdahl and MVP for back pay damages for Plaintiffs and the Segerdahl Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendants Segerdahl and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

## COUNT III
### Violation of 42 U.S.C. § 1981 – Race-based Discrimination
**Plaintiffs on behalf of themselves and a class of similarly situated African American**

**laborers as against Defendants MVP and Visual Pak**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 91 as though set forth herein.

92.     This Count arises under § 1981 for Visual Pak's  discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Visual Pak's discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

93.     As described more fully above and specifically in paragraphs 24 - 68, *supra*, Visual Pak intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

94.     Visual Pak made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Visual Pak requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Visual Pak based on their race, African-American.

95.     In the alternative, Visual Pak knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Visual Pak.

96.     Visual Pak failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

97.     Visual Pak's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

98. As a direct and proximate result of the acts or omissions of Visual Pak and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

99. Visual Pak and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Visual Pak Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Visual Pak pursuant to Rule 23;

B. enjoin Defendants Visual Pak and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Visual Pak Subclass;

C. enter a judgment in their favor and against Defendants Visual Pak and MVP for back pay damages for Plaintiffs and the Visual Pak Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendants Visual Pak and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

**COUNT IV**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Medline**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 99 as though set forth herein.

100. This Count arises under § 1981 for Medline's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Medline's

discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

101.    As described more fully above and specifically in paragraphs 24 - 68, *supra*, Medline intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

102.    Medline made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Medline requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at Medline based on their race, African-American.

103.    In the alternative, Medline knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Medline.

104.    Medline failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

105.    Medline's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

106.    As a direct and proximate result of the acts or omissions of Medline and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

107.    Medline and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Medline Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendants MVP and Medline pursuant to Rule 23;

B.  enjoin Defendants Medline and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Medline Subclass;

C.  enter a judgment in their favor and against Defendants Medline and MVP for back pay damages for Plaintiffs and the Medline Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendants Medline and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT V**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and Georgia Nut**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 107 as though set forth herein.

108.    This Count arises under § 1981 for Georgia Nut's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with Georgia Nut's discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

109.    As described more fully above and specifically in paragraphs 24 - 68, *supra*, Georgia Nut intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

110.    Georgia Nut made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, Georgia Nut requested that its agent

steer Plaintiffs and other similarly situated African Americans away from work at Georgia Nut based on their race, African-American.

111.     In the alternative, Georgia Nut knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at Georgia Nut.

112.     Georgia Nut failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

113.     Georgia Nut's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

114.     As a direct and proximate result of the acts or omissions of Georgia Nut and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

115.     Georgia Nut and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Georgia Nut Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and Georgia Nut pursuant to Rule 23;

B. enjoin Defendants Georgia Nut and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Georgia Nut Subclass;

C. enter a judgment in their favor and against Defendants Georgia Nut and MVP for back pay damages for Plaintiffs and the Georgia Nut Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendants Georgia Nut and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

**COUNT VI**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and C&D**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 115 as though set forth herein.

116. This Count arises under Section 1981 for C&D's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with C&D's discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

117. As described more fully above and specifically in paragraphs 24 - 68, *supra*, C&D intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

118. C&D made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, C&D requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at C&D based on their race, African-American.

119. In the alternative, C&D knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at C&D.

120. C&D failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

121.     C&D's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

122.     As a direct and proximate result of the acts or omissions of C&D and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

123.     C&D and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the C&D Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendants MVP and C&D pursuant to Rule 23;

B.  enjoin Defendants C&D and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the C&D Subclass;

C.  enter a judgment in their favor and against Defendants C&D and MVP for back pay damages for Plaintiffs and the C&D Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendants C&D and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT VII**
**Violation of 42 U.S.C. § 1981 – Race-based Discrimination**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP and MGA**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 123 as though set forth herein.

124.     This Count arises under § 1981 for MGA's discriminatory practices in hiring through their agent or employment agency, MVP, and MVP's compliance with MGA's discriminatory requests as described more fully in paragraphs 24 - 68, *supra*, which resulted in disparate treatment of Plaintiffs and a class of other African-American laborers.

125.     As described more fully above and specifically in paragraphs 24 - 68, *supra*, MGA intentionally discriminated against all Plaintiffs based on their race as African Americans, thereby violating the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

126.     MGA made discriminatory requests of its agent for assigning laborers, MVP, in that, on information from former MVP dispatchers, MGA requested that its agent steer Plaintiffs and other similarly situated African Americans away from work at MGA based on their race, African-American.

127.     In the alternative, MGA knew or should have known that its agent, MVP, was engaging in a discriminatory practice of assigning laborers to work at MGA.

128.     MGA failed to exercise reasonable care to ensure that its agent for assigning laborers to work at their respective facilities, MVP, did not engage in discriminatory assignment practices.

129.     MGA's discrimination against African-American job seekers was based on Plaintiffs' and similarly situated job applicants' race, African American, and violated 42 U.S.C. § 1981.

130.     As a direct and proximate result of the acts or omissions of MGA and MVP alleged in paragraphs 24 - 68, *supra*, Plaintiffs and similarly situated African American job applicants suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

131.     MGA and MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the MGA Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendants MVP and MGA pursuant to Rule 23;

B. enjoin Defendants MGA and MVP from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the MGA Subclass;

C. enter a judgment in their favor and against Defendants MGA and MVP for back pay damages for Plaintiffs and the MGA Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendants MGA and MVP jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

**COUNT VIII**
**Violation of Title VII-Race-based Discrimination–Disparate Treatment**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 131 as though set forth herein.

132.     This Count arises under Title VII for Defendants MVP's discriminatory practices assigning laborers through MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African American laborers.

133.     As described more fully in paragraphs 24 - 68, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

134.     As described more fully in paragraphs 24 - 68, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

135.     As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, all Plaintiffs suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

136.     Defendant MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B.  enjoin Defendants MVP from continuing or permitting future violations of Title VII for racial discrimination against African-American laborers in the Class;

C.  enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action; and

E.  for such other relief as this Court deems just and equitable.

### COUNT IX
**Violation of Title VII- Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendants MVP**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 136 as though set forth herein.

137.     This Count arises under Title VII for Defendant MVP's policy and practice of hiring Hispanic laborers over African American laborers as described more fully in paragraphs

24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

138.    As described more fully in paragraphs 24 - 68, *supra*, Defendant MVP has engaged in a practice of assigning primarily Hispanic laborers to work at its client companies, including the Defendant Client Companies.

139.    MVP's practice of showing preference for assigning Hispanic laborers over African American workers to work at its third party clients, including the Defendant Client Companies, has caused a significant disparate impact on Plaintiffs and other similarly situated African-American laborers in obtaining work assignments through MVP, including at the Defendant Client Companies.

140.    As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

141.    MVP failed to exercise reasonable care to ensure that its agents did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B.  enjoin Defendants MVP from continuing or permitting future violations of Title VII for racial discrimination against African-American laborers in the Class;

C.  enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action; and

E.  for such other relief as this Court deems just and equitable.

## COUNT X
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Segerdahl
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 141 as though set forth herein.

142. This Count arises under Title VII for Defendant Segerdahl's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

143. As described more fully in paragraphs 24 - 68, *supra*, Defendant Segerdahl engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

144. As described more fully in paragraphs 24 - 68, *supra*, Defendant Segerdahl engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

145. As a direct and proximate result of the above-alleged acts or omissions of Defendant Segerdahl, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

146. Defendant Segerdahl's conduct was willful and/or reckless, warranting the imposition of punitive damages.

147. Defendant Segerdahl failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Segerdahl Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant Segerdahl pursuant to Rule 23;

B. enjoin Defendant Segerdahl from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Segerdahl Subclass;

C. enter a judgment in their favor and against Defendant Segerdahl for back pay damages for Plaintiffs and the Segerdahl Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Segerdahl jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

## COUNT XI
### Violation of Title VII-Race-based Discrimination – Adverse Impact
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Segerdahl
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 147 as though set forth herein.

148.    This Count arises under Title VII for Defendant Segerdahl's policy and practice of hiring Hispanic laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

149.    As described more fully in paragraphs 24 - 68, *supra*, Defendant Segerdahl has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

150.    Defendant Segerdahl's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other

similarly situated African American laborers in obtaining work assignments at Defendant Segerdahl.

151. As a direct and proximate result of the above-alleged acts or omissions of Defendant Segerdahl, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

152. Defendant Segerdahl failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Segerdahl Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant Segerdahl pursuant to Rule 23;

B. enjoin Defendant Segerdahl from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Segerdahl Subclass;

C. enter a judgment in their favor and against Defendant Segerdahl for back pay damages for Plaintiffs and the Segerdahl Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Segerdahl jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

## COUNT XII
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Visual Pak
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 152 as though set forth herein.

153. This Count arises under Title VII for Defendant Visual Pak's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in

35

paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

154.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Visual Pak engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

155.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Visual Pak engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

156.     As a direct and proximate result of the above-alleged acts or omissions of Defendant Visual Pak, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

157.     Defendant Visual Pak's conduct was willful and/or reckless, warranting the imposition of punitive damages.

158.     Defendant Visual Pak failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Visual Pak Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant Visual Pak pursuant to Rule 23;

B.  enjoin Defendant Visual Pak from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Visual Pak Subclass;

C.  enter a judgment in their favor and against Defendant Visual Pak for back pay damages for Plaintiffs and the Visual Pak Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendant Visual Pak jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT XIII**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Visual Pak**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 158 as though set forth herein.

159.    This Count arises under Title VII for Defendant Visual Pak's policy and practice of hiring Hispanic laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

160.    As described more fully in paragraphs 24 - 68, *supra*, Defendant Visual Pak has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

161.    Defendant Visual Pak's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Defendant Visual Pak.

162.    As a direct and proximate result of the above-alleged acts or omissions of Defendant Visual Pak, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

163. Defendant Visual Pak failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Visual Pak Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant Visual Pak pursuant to Rule 23;

B. enjoin Defendant Visual Pak from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Visual Pak Subclass;

C. enter a judgment in their favor and against Defendant Visual Pak for back pay damages for Plaintiffs and the Visual Pak Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Visual Pak jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

## COUNT XIV
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Medline
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 163 as though set forth herein.

164. This Count arises under Title VII for Defendant Medline's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

165. As described more fully in paragraphs 24 - 68, *supra*, Defendant Medline engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their

race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

166.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Medline engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

167.     As a direct and proximate result of the above-alleged acts or omissions of Defendant Medline, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

168.     Defendant Medline's conduct was willful and/or reckless, warranting the imposition of punitive damages.

169.     Defendant Medline failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Medline Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant Medline pursuant to Rule 23;

B.  enjoin Defendant Medline from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Medline Subclass;

C.  enter a judgment in their favor and against Defendant Medline for back pay damages for Plaintiffs and the Medline Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendant Medline jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT XV**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendant Medline**
*Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 169 as though set forth herein.

170.     This Count arises under Title VII for Defendant Medline's policy and practice of hiring Hispanic laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

171.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Medline has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

172.     Defendant Medline's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Defendant Medline.

173.     As a direct and proximate result of the above-alleged acts or omissions of Defendant Medline, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

174.     Defendant Medline failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Medline Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant Medline pursuant to Rule 23;

B. enjoin Defendant Medline from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Medline Subclass;

C. enter a judgment in their favor and against Defendant Medline for back pay damages for Plaintiffs and the Medline Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Medline jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

## COUNT XVI
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant Georgia Nut
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 174 as though set forth herein.

175.     This Count arises under Title VII for Defendant Georgia Nut's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

176.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Georgia Nut engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

177.     As described more fully in paragraphs 24 - 68, *supra*, Defendant Georgia Nut engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*

178.     As a direct and proximate result of the above-alleged acts or omissions of Defendant Georgia Nut, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

179.     Defendant Georgia Nut's conduct was willful and/or reckless, warranting the imposition of punitive damages.

180.     Defendant Georgia Nut failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Georgia Nut Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant Georgia Nut pursuant to Rule 23;

B. enjoin Defendant Georgia Nut from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Georgia Nut Subclass;

C. enter a judgment in their favor and against Defendant Georgia Nut for back pay damages for Plaintiffs and the Georgia Nut Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Georgia Nut jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

**COUNT XVII**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendant Georgia Nut**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 180 as though set forth herein.

181.     This Count arises under Title VII for Defendant Georgia Nut's policy and practice of hiring Hispanic laborers over African American laborers through its agent or

employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

182.    As described more fully in paragraphs 24 - 68, *supra*, Defendant Georgia Nut has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

183.    Defendant Georgia Nut's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Defendant Georgia Nut.

184.    As a direct and proximate result of the above-alleged acts or omissions of Defendant Georgia Nut, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

185.    Defendant Georgia Nut failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the Georgia Nut Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant Georgia Nut pursuant to Rule 23;

B.  enjoin Defendant Georgia Nut from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the Georgia Nut Subclass;

C.  enter a judgment in their favor and against Defendant Georgia Nut for back pay damages for Plaintiffs and the Georgia Nut Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant Georgia Nut jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

## COUNT XVIII
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant C&D
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 185 as though set forth herein.

186. This Count arises under Title VII for Defendant C&D's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

187. As described more fully in paragraphs 24 - 68, *supra*, Defendant C&D engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

188. As described more fully in paragraphs 24 - 68, *supra*, Defendant C&D engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

189. As a direct and proximate result of the above-alleged acts or omissions of Defendant C&D, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

190. Defendant C&D's conduct was willful and/or reckless, warranting the imposition of punitive damages.

191.     Defendant C&D failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the C&D Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant C&D pursuant to Rule 23;

B.  enjoin Defendant C&D from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the C&D Subclass;

C.  enter a judgment in their favor and against Defendant C&D for back pay damages for Plaintiffs and the C&D Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendant C&D jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT XIX**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant C&D**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 191 as though set forth herein.

192.     This Count arises under Title VII for Defendant C&D's policy and practice of hiring Hispanic laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

193.     As described more fully in paragraphs 24 - 68, *supra*, Defendant C&D has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

194. Defendant C&D's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Defendant C&D.

195. As a direct and proximate result of the above-alleged acts or omissions of Defendant C&D, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

196. Defendant C&D failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the C&D Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant C&D pursuant to Rule 23;

B. enjoin Defendant C&D from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the C&D Subclass;

C. enter a judgment in their favor and against Defendant C&D for back pay damages for Plaintiffs and the C&D Subclass in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. hold Defendant C&D jointly and severally liable to pay such damages and attorneys' fees and costs; and

F. for such other relief as this Court deems just and equitable.

### COUNT XX
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
### Plaintiffs on behalf of themselves and a class of similarly situated African American laborers as against Defendant MGA
### *Class Action*

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 196 as though set forth herein.

197. This Count arises under Title VII for Defendant MGA's discriminatory practices in hiring through its agent or employment agency, MVP, described more fully in paragraphs 24 - 68, *supra*, resulting in disparate treatment of Plaintiffs and a class of African-American laborers.

198. As described more fully in paragraphs 24 - 68, *supra*, Defendant MGA engaged in a pattern and practice of intentional discrimination against Plaintiffs based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

199. As described more fully in paragraphs 24 - 68, *supra*, Defendant MGA engaged in a pattern and practice of intentional discrimination against other similarly situated African American laborers based on their race, African American, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

200. As a direct and proximate result of the above-alleged acts or omissions of Defendant MGA, Plaintiffs and other similarly situated African-American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

201. Defendant MGA's conduct was willful and/or reckless, warranting the imposition of punitive damages.

202. Defendant MGA failed to exercise reasonable care to ensure that its agent for the assignment of laborers, MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the MGA Subclass respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant MGA pursuant to Rule 23;

B. enjoin Defendant MGA from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the MGA Subclass;

C.  enter a judgment in their favor and against Defendant MGA for back pay damages for Plaintiffs and the MGA Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendant MGA jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.

**COUNT XIX**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated African American**
**laborers as against Defendant MGA**
***Class Action***

Plaintiffs hereby incorporate and re-allege paragraphs 1 through 202 as though set forth herein.

203.    This Count arises under Title VII for Defendant MGA's policy and practice of hiring Hispanic laborers over African American laborers through its agent or employment agency, MVP, as described more fully in paragraphs 24 - 68, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of African American laborers.

204.    As described more fully in paragraphs 24 - 68, *supra*, Defendant MGA has engaged in a practice of securing the vast majority of its laborers through its employment agencies, including MVP.

205.    Defendant MGA's practice of securing laborers to work at its facility from employment agencies which prefer to assign and, in fact, do assign Hispanic laborers over African American laborers has caused a significant disparate impact on Plaintiffs and other similarly situated African American laborers in obtaining work assignments at Defendant MGA.

206.    As a direct and proximate result of the above-alleged acts or omissions of Defendant MGA, Plaintiffs and other similarly situated African American laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

207.    Defendant MGA failed to exercise reasonable care to ensure that its agents for the assignment of laborers, including MVP, did not engage in discriminatory assignment practices.

WHEREFORE, Plaintiffs and the MGA Subclass respectfully pray that this Court:

A.  allow this action to proceed as a class action against Defendant MGA pursuant to Rule 23;

B.  enjoin Defendant MGA from continuing or permitting future violations of § 1981 for racial discrimination against African-American laborers in the MGA Subclass;

C.  enter a judgment in their favor and against Defendant MGA for back pay damages for Plaintiffs and the MGA Subclass in amounts to be determined at trial;

D.  for all reasonable attorney's fees and costs in bringing this action;

E.  hold Defendant MGA jointly and severally liable to pay such damages and attorneys' fees and costs; and

F.  for such other relief as this Court deems just and equitable.


Respectfully submitted,

Dated: May 9, 2016


*/s/Christopher J. Williams*
Christopher J. Williams
Alvar Ayala
Neil Kelley
Workers' Law Office, P.C.
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiffs