IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERELL PRUITT, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 16 C 5079 |
| ) | |
| PERSONNEL STAFFING GROUP, LLC ) | |
| d/b/a MVP, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions to dismiss, motions to strike class allegations, and motions to sever. For the reasons stated below, Defendants' motions to dismiss are granted in part and denied in part, and Defendants' motion to strike class allegations and motion to sever are denied.

## BACKGROUND

Plaintiffs are allegedly African-American laborers who obtained employment through Defendant Personnel Staffing Group, LLC d/b/a MVP (MVP), which is a temporary staffing agency. Plaintiffs were allegedly assigned to work at Defendant The Segerdahl Corp. (Segerdahl), Defendant Visual Pack Company (Visual), Defendant Medline Industries, Inc. (Medline), Defendant Georgia Nut Company

1

(Georgia Nut), Defendant C&D Recycling, LLC (C&D), and Defendant Metropolitan Graphic Arts, Inc. (MGA) (collectively referred to as "Client Companies"). Plaintiffs allege that beginning in May 2012, MVP would assign Hispanic laborers to work at the Client Companies even though Plaintiffs and other African-American laborers applied for the assignments first and were qualified for the assignments. Plaintiffs allege that MVP was acting pursuant to the requests of the Client Companies to assign Hispanic laborers instead of African-American laborers. Plaintiffs also contend that on occasions when MVP assigned African-American laborers to work at the Client Companies, after being transported to work sites, supervisors of the Client Companies would select all the Hispanic laborers to work before selecting any African-American laborers.

Plaintiffs include in their amended complaint claims brought against MVP alleging race discrimination in violation of 42 U.S.C. § 1981 (Section 1981) (Count I), Section 1981 claims brought against MVP and Segerdahl (Count II), Section 1981 claims brought against MVP and Visual (Count III), Section 1981 claims brought against MVP and Medline (Count IV), Section 1981 claims brought against MVP and Georgia Nut (Count V), Section 1981 claims brought against MVP and C&D (Count VI), Section 1981 claims brought against MVP and MGA (Count VII), disparate treatment race discrimination claims brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* against Segerdahl (Count VIII), Title VII adverse impact race discrimination claims brought against Segerdahl (Count IX), Title VII disparate treatment race discrimination claims brought against

2

Visual ( Count X), Title VII adverse impact race discrimination claims brought against Visual ( Count XI), Title VII disparate treatment race discrimination claims brought against Georgia Nut ( Count XII), Title VII adverse impact race discrimination claims brought against Georgia Nut (Count XIII), Title VII disparate treatment race discrimination claims brought against C&D ( Count XIV), Title VII adverse impact race discrimination claims brought against C&D ( Count XV), Title VII disparate treatment race discrimination claims brought against MGA Count XVI), and Title VII adverse impact race discrimination claims brought against MGA (Count XVII). Defendants move to dismiss certain claims brought against them. Defendants also move to dismiss or strike the class allegations and to sever their claims.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court."

3

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

**DISCUSSION**

I.  Motions To Dismiss

Defendants argue that Plaintiffs have failed to allege sufficient facts to state a valid claim against certain Defendants, that certain Title VII claims exceed the scope of the Equal Employment Opportunity Commission (EEOC) charges, and that the Title VII claims brought by certain Plaintiffs are untimely.

A.  Sufficiency of Allegations

Defendants contend that there are insufficient facts alleged in the amended complaint to state a valid claim against certain Defendants.

1.  Allegations Against MVP

MVP argues that Plaintiffs have not alleged sufficient facts concerning MVP to state a valid claim against MVP.  Section 1981 provides the following:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  Title VII provides the following:

> It shall be an unlawful employment practice for an employer–
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).  MVP cites *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999) in support of elements that MVP believes must be covered in order to properly plead a Section 1981 or Title VII claim.  (MVP Dis. 5-6); (MVP Dis. Reply 3).  The elements cited in *Mills*, however, are part of the *McDonnell Douglas* burden-shifting method employed at the summary judgment stage.  *Id.* at 454.  The court in *Mills* was in fact reviewing a summary judgment ruling and was not setting forth a pleading standard.  *Id.*  The Seventh Circuit has held that "the pleading standards in Title VII cases are different from the evidentiary burden a plaintiff must

5

subsequently meet when using the method of indirect proof under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *see also Snow v. J. Sterling Morton High Sch. Dist. 201*, 2016 WL 5391222, at *3 (N.D. Ill. 2016)(stating that "the evidentiary standards outlined in *McDonnell-Douglas* are distinct from the pleading standard"). Plaintiffs are not required to satisfy MVP's proposed list of elements in order to plead valid claims under the federal pleading standard. (MVP Dis. 8).

MVP also contends that Plaintiffs' claims should be dismissed because, according to MVP, Plaintiffs failed to allege all facts concerning "the who, what, where, or when" in regard to their claims. (MVP Dis. 6, 10); (MVP Dis. Reply 5). That standard referenced by MVP is the more stringent pleading standard for pleading with particularity under Federal Rule of Civil Procedure 9(b) in cases involving fraud, which is not applicable in this case. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)(stating that in order to plead with particularity a "plaintiff ordinarily must describe the who, what, when, where, and how of the fraud - the first paragraph of any newspaper story")(internal quotations omitted)(quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). MVP thus seeks to apply the wrong pleading standard in its motion. *See Presser*, 836 F.3d at 776 (stating that "the pleading standards under Rule 8 and Rule 9 remain distinct").

Plaintiffs allege that they are African-American laborers. (A. Compl. Par. 11-

15). Plaintiffs contend that MVP, in assigning laborers to the Client Companies, would abide by the preference of the companies and assign Hispanic laborers instead of African-America laborers when possible. (A. Compl. Par. 34-43, 64-65). Plaintiffs further allege that MVP would assign Hispanic laborers to work even though there were African-American laborers who were as qualified and had entered their names on the daily sign-up list before the Hispanic laborers. (A. Comp. Par. 35-43). Such facts, which must be accepted as true at the pleadings stage, plausibly suggest unlawful intentional discrimination based on race.

In regard to the Title VII disparate impact claims pled in the alternative, such facts also suggest that MVP's policy of abiding by the Client Companies' alleged racial preferences had a disparate impact on African-American laborers such as Plaintiffs. The Seventh Circuit has indicated that "an employment policy or practice may fall short of being intentionally discriminatory but nonetheless be tainted by bias," and that "the presence of subjective bias does not remove the policy or practice from the ambit of disparate-impact theory." *Adams v. City of Indianapolis*, 742 F.3d 720, 731-32 (7th Cir. 2014)(indicating "that there may be situations in which an employer lacks affirmative discriminatory intent but subconscious stereotypes and prejudices would remain, which was a lingering form of the problem that Title VII was enacted to combat")(internal quotations omitted)(quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988)). Plaintiffs' allegations that MVP acted in accordance with its clients' racial preferences when making assignments and that the Client Companies prized Hispanic laborers above African-American laborers,

7

plausibly suggests that, even if there was no purposeful intent by MVP to discriminate against African-Americans, MVP's alleged conduct involved an underlying bias and stereotypes that could support a Title VII disparate impact claim. Even if those alleged stereotypes were only held by Client Companies, Plaintiffs allege that MVP was a joint employer and facilitated the alleged unlawful discrimination in partnership with the Client Companies. (A. Compl. Par. 61, 63-66).

MVP references the portion of the ruling in *Adams*, in which the Court noted that the complaint in that case lacked "allegations about the number of applicants and the racial makeup of the applicant pool as compared to the candidates promoted or as compared to the . . . department as a whole." 742 F.3d at 733. (MVP Mot. 8-9). The Court, however, was merely commenting on the allegations before it and was not setting forth black letter requirements for a complaint in every case. The Court in *Adams* concluded that in the absence of a statistical analysis, a plaintiff must allege "factual material to move the disparate-impact claims over the plausibility threshold." *Id.* at 733. In this case, where the allegations suggest that Hispanic laborers were generally available to fill most assignments and African-American laborers were only chosen as a matter of last resort, the facts suggest a significant disparate impact on African-Americans. Such facts are sufficient at the pleadings stage for disparate-impact claims. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 879 (N.D. Ill. 2014)(citing to *Lucas v. Ferrara Candy Company*, 2014 WL 3611130 (N.D. Ill. 2014), in a case where the defendant employer allegedly "preferr[ed]

plausibly suggests that, even if there was no purposeful intent by MVP to discriminate against African-Americans, MVP's alleged conduct involved an underlying bias and stereotypes that could support a Title VII disparate impact claim. Even if those alleged stereotypes were only held by Client Companies, Plaintiffs allege that MVP was a joint employer and facilitated the alleged unlawful discrimination in partnership with the Client Companies. (A. Compl. Par. 61, 63-66).

MVP references the portion of the ruling in *Adams*, in which the Court noted that the complaint in that case lacked "allegations about the number of applicants and the racial makeup of the applicant pool as compared to the candidates promoted or as compared to the . . . department as a whole." 742 F.3d at 733. (MVP Mot. 8-9). The Court, however, was merely commenting on the allegations before it and was not setting forth black letter requirements for a complaint in every case. The Court in *Adams* concluded that in the absence of a statistical analysis, a plaintiff must allege "factual material to move the disparate-impact claims over the plausibility threshold." *Id.* at 733. In this case, where the allegations suggest that Hispanic laborers were generally available to fill most assignments and African-American laborers were only chosen as a matter of last resort, the facts suggest a significant disparate impact on African-Americans. Such facts are sufficient at the pleadings stage for disparate-impact claims. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 879 (N.D. Ill. 2014)(citing to *Lucas v. Ferrara Candy Company*, 2014 WL 3611130 (N.D. Ill. 2014), in a case where the defendant employer allegedly "preferr[ed]

Latino workers to African American workers . . . almost none of whom [were] able to obtain assignments to work at" at the employer).

MVP also argues that Plaintiffs have not provided various "factual details" to support their claims. (MVP Dis. 6). Defendants desire to know all of the exact dates that Plaintiffs sought employment and names and Client Companies associated with each alleged incident of discrimination. (MVP Dis. 6). Such specificity is not required at the pleadings stage. Plaintiffs must only allege facts to plausibly suggest valid claims. *Concentra*, 496 F.3d at 776. The precise factual details regarding the alleged discriminatory incidents can be obtained by MVP during the discovery process. Plaintiffs have thus alleged sufficient facts to state valid Section 1981 and Title VII claims against MVP. At the summary judgment stage, however, Plaintiffs will need to point to sufficient evidence to support such claims and will no longer be able to rely on their pleadings.

### 2. Allegations Against Segerdahl

Segerdahl argues that Plaintiffs have not alleged sufficient facts concerning Segerdahl to state a valid claim against Segerdahl. Segerdahl argues that Plaintiffs' allegations are too vague and fail to specifically reference Segerdahl in regard to alleged misconduct. Plaintiffs allege that Segerdahl is one of the Client Companies that contracts with MVP for laborers. (A. Compl. Par. 1, 23-26). Plaintiffs further allege that Segerdahl along with the other Client Companies forwarded racial preferences for laborers to MVP and that MVP, in accordance with its policy,

9

followed such requests. (A. Compl. Par. 53, 63-66). Plaintiffs' allegations suggest that the Client Companies, including Segerdahl acted in a uniform fashion, and that MVP acted in a uniform fashion in regard to Client Companies. To the extent that Segerdahl demands allegations that specifically "implicate[] Segerdahl," and argues that it did not act in the same manner as the other Client Companies, it is premature at this juncture to challenge the accuracy of the facts alleged in the amended complaint. (Seg. Dis. 4). The allegations in the amended complaint must be accepted as true at this juncture. Plaintiffs have alleged sufficient facts to state a valid claim against Segerdahl. At the summary judgment stage, however, Plaintiffs will need to point to sufficient evidence to support such claims and will no longer be able to rely on their pleadings.

### 3. Allegations Against Visual

Visual argues that Plaintiffs have not alleged sufficient facts concerning Visual to state a valid claim against Visual. Visual contends that the allegations in the amended complaint are too vague and that "there is not a single specific allegation as to" Visual in the amended complaint. (V Mot. 1). Visual also points to portions of the amended complaint that Visual perceives to be inconsistent. However, as stated above in regard to Segerdahl, Visual is named as one of the Client Companies that allegedly uniformly participated in the alleged discriminatory racial preference process with MVP. To the extent that Visual seeks to challenge the allegations in the amended complaint, it is premature to do so. To the extent that

Visual argues that certain allegations are unclear, a motion to dismiss would not be the proper motion to pursue to address such concerns. *See* Fed. R. Civ. P. 12(e)(providing relief to seek a more definite statement).

Visual also contends that it was not the employer of Plaintiffs. Visual cites to *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377 (7th Cir. 1991) in support of Visual's contention as to what Plaintiffs must "allege and prove." (V Dis. 5). The court in *Knight*, however, was reviewing a district court's ruling during a bench trial, far beyond the pleadings stage. *Id.* at 377. Contrary to Visual's contention, Plaintiffs are not required to prove facts at this initial pleadings stage. The Seventh Circuit has made clear that "[a] Title VII plaintiff might have joint employers." *Tritsis v. BankFinancial Corp.*, 2016 WL 5171785, at *2 (N.D. Ill. 2016)(internal quotations omitted)(quoting *Sklyarsky v. Means-Knaus Partners, LP*, 777 F.3d 892, 895 (7th Cir. 2015)). Plaintiffs allege in the amended complaint that Visual was a joint employer of Plaintiffs and that Visual had certain control over Plaintiffs' employment. (Compl. Par. 25-26, 61-67). Through fact finding in discovery relating to Visual's control over Plaintiffs' work at Visual's facility, the parties can gather evidence relating to the joint employer issue. To the extent that a determination of whether Visual was Plaintiffs' employer can be made as a matter of law, such a determination can be made after evidence is gathered in discovery and the court can consider such evidence and the pertinent factors. *See Tritsis*, 2016 WL 5171785, at *2 (explaining the various factors that must be addressed in making a joint employer determination). Plaintiffs were not required to present such evidence

11

in their amended complaint at the pleadings stage.

In regard to the disparate impact claim against Visual, Visual also points to the portion of the ruling in *Adams* in which the Seventh Circuit stated that there should be "some factual content in the complaint tending to show" that the process in question "caused a relevant and statistically significant disparity . . . ." 742 F.3d at 733; (V Dis. 8). In the instant action, Plaintiffs' allegations that Hispanic laborers ended up being routinely assigned to Client Companies and that the African-American laborers were chosen only "as a last resort" plausibly suggests that there is a relevant and statistically significant disparity in this case. (A. Compl. Par. 53). Plaintiffs have alleged sufficient facts to state a valid claim against Visual. At the summary judgment stage, however, Plaintiffs will need to point to sufficient evidence to support such claims and will no longer be able to rely on their pleadings.

### 4. Allegations Against Georgia Nut

Georgia Nut argues that Plaintiffs have not alleged sufficient facts concerning Georgia Nut to state a valid claim against Georgia Nut. Georgia Nut complains that there are not sufficient allegations specifically referencing misconduct by Georgia Nut. As indicated above in regard to the other Client Companies, Georgia Nut was alleged to be one of the Client Companies that allegedly took part in the alleged discriminatory assignment process. Georgia Nut also contends that it cannot be sued under Title VII because it was not Plaintiffs' employer and did not have control over the employment of Plaintiffs. Plaintiffs allege that Georgia Nut was a joint employer

12

with MVP and present allegations as to control over their employment. (Compl. Par. 25-26, 61-67). Such allegations are sufficient at the pleadings stage. To the extent that Georgia Nut seeks to delve into the evidence or challenge Plaintiffs' allegations, it is premature to do so at this juncture. Plaintiffs have alleged sufficient facts to state a valid claim against Georgia Nut. At the summary judgment stage, however, Plaintiffs will need to point to sufficient evidence to support such claims and will no longer be able to rely on their pleadings.

### B. Scope of EEOC Charges

Defendants argue that Plaintiffs failed to exhaust their administrative remedies in regard to certain Title VII claims. A plaintiff seeking to bring a Title VII claim in Illinois must first file a charge with the EEOC and exhaust the available administrative remedies. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015)(explaining that "[t]he primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances"). In addition to bringing Title VII claims that fall within the scope of the EEOC charge, a plaintiff can also file claims that are not specifically referenced in the EEOC charge if there is "a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Luevano*, 722 F.3d at 1030 (internal quotations omitted)(quoting *Cheek v. Western &*

*Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

### 1. Title VII Claims Brought Against C&D

Defendants contend that Plaintiffs failed to file any EEOC charge against C&D. Plaintiffs have not disputed this point or offered any justification for failing to exhaust their administrative remedies. Therefore, the Title VII claims brought against C&D are dismissed.

### 2. Title VII Claims Brought by Cox and Peterson

Defendants contend that Plaintiff Jasmine Cox (Cox) and Plaintiff Ronald Peterson (Peterson) failed to exhaust their administrative remedies as to certain Title VII claims brought in this case. Cox alleges in her EEOC Charge that she is female and that Client Companies and MVP discriminated against her and other female workers by assigning male workers in place of qualified female workers. (P. Ex. E). Cox indicated on the charge that she was discriminated against because of her sex and did not reference any discrimination based on her race. The alleged sex discrimination in Cox's EEOC Charge is far removed from the alleged race discrimination that is presented in this action. Cox has failed to exhaust her administrative remedies as to any Title VII claims in this action and such claims are dismissed. In regard to Peterson, Georgia Nut contends that Peterson never filed an EEOC Charge against Georgia Nut. Plaintiffs have not disputed this point nor produced any evidence of any such Charge. Therefore, Peterson's Title VII claims

14

brought against Georgia Nut are dismissed.

### 3. Disparate Impact Claims

Defendants also contend that the Title VII disparate impact claims in this case are beyond the scope of their EEOC Charges. Plaintiffs alleged in their EEOC Charges that they sought employment through MVP as a laborer and that although they were qualified for assignments, they were denied such assignments because they are African-American. Plaintiffs further alleged that the Client Companies have a "policy and/or practice of preferring non-African American laborers over other, qualified African-American laborers. . . ." (P. Ex. A-D). Plaintiffs further allege that the policy "had the effect of denying" Plaintiffs "and a class of other qualified African-American laborers an equal employment opportunity and resulted in systemic discrimination against African-American laborers . . . ." (P Ex. A-D). Defendants argue that in the amended complaint, Client Companies allegedly told MVP to "steer" away African-American laborers, but in the EEOC Charges Plaintiffs told MVP that they have a preference for non-African-American laborers. Defendants are simply quibbling with the wording in the EEOC Charges and engaging in semantics in arguing that there is a significant difference between such allegations. The facts alleged in the amended complaint are essentially the same as those contained in the EEOC Charges. Plaintiffs are contending that the Client Companies chose laborers based on racial preferences and that MVP in working with the Client Companies and in assigning laborers acted based on such racial

preferences. In addition, to the extent that there are any perceived differences in the EEOC Charges and allegations in this case, such claims could have been reasonably expected to grow out of an EEOC investigation of the allegations in the charges. Thus, except for the Title VII claims brought against C&D, the Title VII claims brought by Cox, and the Title VII claims brought by Peterson against Georgia Nut, Plaintiffs have exhausted their administrative remedies in regard to their Title VII disparate impact claims.

C. Timeliness of Certain Claims

Defendants argue that the Tile VII claims brought by Peterson and Plaintiff Plax Hall Murdock-Alexander, Jr. (Murdock) are untimely. A Title VII claim must be "filed within 300 days of the alleged discriminatory act or unlawful practice." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016). Defendants contend that the EEOC Charges by Peterson indicate that the latest he sought work through MVP was in February 2014, and that the EEOC Charges by Murdock indicate that the latest he sought work through MVP was in April 2014. A review of the EEOC Charges, however, shows that Peterson and Murdock alleged that they sought employment in such months "and thereafter including up through the present. . . ." (P Group Ex. B, D). The pleadings thus do not indicate on their face that the Title VII claims brought by Peterson or Murdock are untimely. Defendants, however, may renew their statute of limitations arguments at the summary judgment stage, if the evidence shows that any Plaintiffs are seeking relief beyond the limitations

16

period.


II. Motions to Strike or Dismiss Class Allegations

Defendants move to strike the class allegations in the amended complaint. Defendants argue that a class action would not be appropriate in this case under Federal Rule of Civil Procedure 23. Plaintiffs, however, have not yet moved for certification of a class in this action and thus Defendants' arguments are premature. Defendants cite to *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011) in which the Seventh Circuit has acknowledged that in some instances "a court may deny class certification even before the plaintiff files a motion requesting certification." *Id.* at 563. Defendants, however, have not shown that such a drastic measure should be taken in this case. They present no justification for denying Plaintiffs the opportunity to conduct some class discovery and for the court to resolve the class certification issue on the merits in an orderly fashion. Based on the allegations in Plaintiffs' amended complaint it is not evident that class certification is unwarranted. In *Kasalo*, the Seventh Circuit likewise declined to strike the class allegations and concluded that the plaintiff should be allowed to conduct class discovery so that the "district court [would] be in a better position to make an appropriate ruling." *Id.*; *see also Lucas*, 68 F. Supp. 3d at 880 (holding that it was "premature to bar the plaintiffs from moving for class certification"). Therefore, Defendants' motions to strike class allegations are denied.

III. Motions to Sever

Defendants argue that they cannot be joined in the same action and move to sever their claims. Plaintiffs seek to join Defendants in this case under Federal Rule of Civil Procedure 19(a)(1) (Rule 19(a)(1)) and Federal Rule of Civil Procedure 20(a)(2)(Rule 20(a)(2)). Rule 19(a)(1) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties . . . ." Fed. R. Civ. P. 19(a)(1). Rule 20(a)(2) provides the following:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2); *see also Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001)(stating that the court should "determine whether the permissive joinder of a party will comport with the principles of fundamental fairness" and consider whether " joinder would create prejudice, expense or delay"). Defendants argue that Plaintiffs have brought claims against various unrelated companies and that their claims involve different policies and alleged actions by the various Defendants. Defendants contend that there are separate facts and transactions relating to each Defendant. At this juncture, however, based on the pleadings before the court, Plaintiffs contend that there was a uniform practice on the part of MVP in

18

addressing the alleged racial preference requests from the Client Companies.  On the surface of the pleadings there is no apparent reason why Defendants cannot be joined in this action.  There is no showing by Defendants at this juncture that joinder will cause prejudice, expense or delay.  Therefore, the motions to sever are denied.  However, as this case progresses, if Defendants can show that there is sufficient justification to warrant the severance of claims, Defendants may renew the motions to sever.

## CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are granted in part and denied in part.  The Title VII claims brought against C&D are dismissed.  Cox's Title VII claims are dismissed.   Peterson's Title VII claims brought against Georgia Nut are dismissed.  Defendants' motions to strike class allegations and motions to sever are denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   November 30, 2016