**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DERELL PRUITT and RONALD PETERSON, on behalf of themselves and other similarly situated laborers, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-5079 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, THE SEGERDAHL CORP., VISUAL PAK COMPANY, MEDLINE INDUSTRIES, INC., and METROPOLITAN GRAPHICS ARTS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Defendants' motions to deny class certification [449, 450, 451, 452] are granted.  Plaintiffs are given until July 10, 2020 to file a status report stating whether they intend to dismiss the case or proceed on behalf of the two named plaintiffs individually.  If no status report is filed, the case will be dismissed.

**I.    Background**

Plaintiffs allege they were racially discriminated against when applying for assignments for temporary work at a staffing agency.  The current Named Plaintiffs are Derell Pruitt and Ronald Peterson, African Americans who applied for work at Defendant Personnel Staffing Group, LLC d/b/a MVP ("MVP"), a staffing agency.  MVP accepts applicants for temporary positions at other companies, selects qualified applicants, and sends them to the client companies.  Four client companies are currently defendants in this case: The Segerdahl Corp. ("Segerdahl"), Visual Pak Company ("Visual Pak"), Medline Industries, Inc. ("Medline"), and Metropolitan Graphic Arts,

Inc. ("MGA") (the "Client Companies").[1]  Plaintiffs claim that the Client Companies and MVP discriminate against African American applicants and in favor of Latino applicants, both when MVP selects applicants to send to the work sites and when the Client Companies select workers at the site.

The Named Plaintiffs sought work from MVP in 2013 or 2014 (some of the exact dates are disputed, as discussed below).  Pruitt appears never to have received an assignment at all. [See 457, at 4 n.4.]  Peterson was sent to a Client Company site at least once but was not selected for work. See [367-2, at 79-80.]  Both of the Named Plaintiffs have criminal convictions, but a criminal record did not make them ineligible to receive assignments from MVP.  The Named Plaintiffs believe that MVP and the Client Companies discriminated against them on the basis of race in selecting workers.  The Named Plaintiffs have been involved in other purported class actions, including one against MVP, *Calderon, et al., v. Personnel Staffing Group, et al.*, No. 15-cv-9626,[2] which involves state law claims for payment of wages for days on which workers were sent to client companies but not selected to work.

Plaintiffs brought a purported class action against MVP and the Client Companies on May 9, 2016.  They seek to represent a class of "[a]ll African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at one or more of the Defendant Client Companies at any time between May 9, 2012 and the date of judgment and who, on one or more occasion, were not assigned to work at one of the Defendant Client Companies by MVP." [118, at 15.]  They charge Defendants with violations of Title VII of the Civil Rights Act

---

[1] Initially, Georgia Nut Company ("Georgia Nut"), C&D Recycling, LLC ("C&D") were also named as defendants.  Georgia Nut was dismissed with prejudice on September 20, 2019 [see 428], and C&D was dismissed with prejudice on January 23, 2020 [see 443].

[2] Pending in this district before Judge Alonso.

of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for both disparate treatment and adverse impact, and Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 for race-based discrimination. [118, at 18-44.]

The original complaint listed five named plaintiffs: Derell Pruitt, Ronald Peterson, Paul Flanagan, Plaz Hall Murdock-Alexander, Jr., and Jasmine Cox. [1, at 1.] When Plaintiffs filed their second amended class action complaint on January 13, 2017, Plaintiff Jasmine Cox was terminated as a Plaintiff because she had filed an EEOC charge based only on alleged sex discrimination, not race discrimination. [118; 325-9, at 25:24-26:2.] She therefore was unable to proceed on a race discrimination claim. On March 13, 2017, Plaintiff Paul Flanagan filed a motion to be removed as a named Plaintiff for personal reasons [see 158], which the Court granted. [163.]

In July 2017, Defendants filed motions for summary judgment with respect to the claims of Plaintiffs Derell Pruitt and Ronald Peterson based on their respective bankruptcies.[3] On August 10, 2017, Judge Der-Yeghiayan (to whom the case was then-assigned) granted Plaintiff Plaz Hall Murdock-Alexander's oral motion to be removed as a putative class representative. [251.] Plaintiff contends that Mr. Murdock-Alexander sought to be removed as a named Plaintiff for personal reasons [325-9, at 26:15-18], but Defendants contend that Murdock-Alexander withdrew because he was not a suitable class representative—citing to his deposition testimony and indicating that such testimony can be provided to the Court if necessary. [332, at 3 n.2.] Judge Der-Yeghiayan also struck Plaintiffs' motion seeking leave to file a third amended complaint and to substitute Arthur Mitchell as a named Plaintiff. [251.]

---

[3] Pruitt had filed for bankruptcy in March 2016 before the lawsuit was filed. Plaintiffs' counsel represents that they did not know about Pruitt's bankruptcy when they filed suit. Peterson filed for bankruptcy in March 2017.

At that time, Judge Der-Yeghiayan indicated that it would consider the identity and adequacy of class representatives at the class certification stage and directed that the case proceed to class discovery with Pruitt and Peterson as the only remaining named Plaintiffs. *Id*. During an August 31, 2017, hearing, Defendants informed the Court that Peterson's claim in this case had been settled by the trustee in his bankruptcy case (an assertion that Plaintiffs' counsel disputed) and that Pruitt's bankruptcy proceedings had been reopened to include his claim in this case. [325-9.] Because the trustee in Peterson's bankruptcy had not abandoned his claim, the Court dismissed Peterson as a named Plaintiff. [325-9, at 22:20-23:1.] The Court recognized that any settlement was subject to approval by the bankruptcy court. [*Id*. at 11:24-12:9.] The Court also dismissed Pruitt, concluding that Pruitt had relinquished his rights to pursue his claims by filing for bankruptcy. [*Id*. at 25:2-9.] The Court further denied Plaintiffs' oral motion to substitute Arthur Mitchell as a named Plaintiff. Because there were no active Plaintiffs, the Court stayed the case until November 14, 2017. [*Id*. at 31:5-6.]

On October 30, 2017, Plaintiffs filed a renewed motion to substitute Arthur Mitchell as named Plaintiff. [316.] Defendants filed a response objecting to the motion. [319.] In their opposition, Defendants noted that they had already spent hundreds of thousands of dollars defending the lawsuit and argued that it would be unduly prejudicial to Defendants to grant the motion to substitute. [*Id*. at 9-11.] On November 7, 2017, the Court denied Plaintiffs' motion to substitute on the grounds that substitution would be unduly prejudicial to Defendants. [325-10, at 11:9-19.] Because there were no active Plaintiffs, the Court dismissed the case. [*Id*. at 11:20-22.]

Plaintiffs sought reconsideration of the Court's denial of their motion to substitute and the dismissal of this action under Federal Rule of Civil Procedure 59(e). [See 330.] On January 26, 2018, the case was reassigned to the undersigned, in light of Judge Der-Yeghiayan's retirement.

This Court denied the motion for reconsideration of the denial of Plaintiffs' motion to substitute, but granted reconsideration of the dismissal, vacated the dismissal order, and reinstated Pruitt and Peterson's claims. [342, at 3-4.]  Defendants then filed motions for denial of class certification [363, 366, 372, 374, 375, 276, 378].  The motions were held in abeyance while the parties engaged in settlement discussions that lasted several months. Ultimately, the case did not settle, and Defendants refiled their motions for denial of class certification. [See 416 through 421; later refiled a second time as 449-452].[4]  The motions for denial of class certification are now before this Court.

## II.    Legal Standard

To be certified as a class action, "a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) provides that a named party may sue on behalf of individuals who are similarly situated if: (1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the putative class ("commonality"); (3) the claims or defenses of the named party are typical of the claims or defenses of the putative class members ("typicality"); and (4) the named party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). "[A] proposed class must always meet the Rule 23(a) requirements." *Messner*, 669 F.3d at 811. "Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily [courts] begin there and only turn * * * to Rule 23(b) after [the court is] certain that all of Rule 23(a)'s requirements had been met." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).  To satisfy Rule 23, the class also must satisfy the "implicit"

---

[4] Because C&D and Georgia Nut were dismissed, their motions to deny class certification were not refiled the second time.

requirement of definition by objective criteria that falls within the rubric of "ascertainability." *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 657 (7th Cir. 2015).

Plaintiffs bear the burden of demonstrating that they are entitled to class certification, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006), even when defendant moves to deny class certification. See, *e.g.*, *Lee v. Children's Place Retail Stores, Inc.*, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014) ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action."); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010) ("Even though the issue of class certification thus comes before the Court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements for class certification under Rule 23 has been satisfied."); *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 640 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th Cir. 2009) (noting that "[t]he party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met" when evaluating motion brought by defendant to deny class certification near the close of discovery). Failure to satisfy even one of the elements precludes class certification. *Oshana*, 472 F.3d at 513.

Although class certification proceedings are not "a dress rehearsal for the trial on the merits," *Messner*, 669 F.3d at 811, for purposes of deciding the certification question, the Court does not presume that all well-pleaded allegations are true. See *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). Rather, before it allows a case to proceed as a class action, the Court "should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). But the showing need not be "to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811 (citation omitted). The Court exercises broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) (quotation marks and citation omitted); *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

## III. Analysis

To maintain a class action, Plaintiff must identify a class and demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Defendants here challenge only the Named Plaintiffs' adequacy as class representatives. For the adequacy requirement of Rule 23(a)(4) to be satisfied, the claims and interests of the named Plaintiffs must not conflict with those of the class, the class representatives must have sufficient interest in the outcome of the case, and class counsel must be experienced and competent. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

### A. Timing of the Motion

This first issue to address is timing. The parties have conducted discovery on the adequacy of the Named Plaintiffs under Rule 23(a)(4), but have not yet completed discovery on topics related to other requirements for class certification. Defendants moved to deny class certification on Rule 23(a)(4) grounds alone, without concluding class discovery. Plaintiffs' position is that the motion

to deny class certification is premature, as they have not yet finished conducting class discovery. [441, at 8.] Plaintiffs also say they lack certain documents that are the subject of their pending motion to compel [*id.*], which Plaintiffs' counsel needs begin the process of cultivating a record on the Plaintiffs' attempts to obtain work through MVP and which will support certification. [441, at 9.] Defendants point out that courts can rule on class certification without a motion to certify from the plaintiff, and should do so when no further discovery would be helpful. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (stating that Rule 23(c)(1)(A) permits a court to "deny class certification even before the plaintiff files a motion requesting certification" and that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination").

Regarding discovery, Defendants have deposed the two remaining named plaintiffs (and at least one of the three named plaintiffs who dropped out). Pruitt was in fact deposed over the course of three days. [441, at 22.] Defendants assert that they produced documents relevant to both Pruitt and Peterson, "include[ing] signed and dated applications for work from MVP for both Plaintiffs Pruitt and Peterson and assignment and payment histories for Peterson." [457, at 4.] MVP states that it has no record that Pruitt was ever sent out on assignment. [*Id.* at n.4.]

On the only issue before the Court—the adequacy of the remaining Named Plaintiffs to serve as class representatives—the parties have developed a robust record, and they have submitted sufficient evidence for the Court to rule on the motion to deny class certification. The *class* discovery that Plaintiffs want would have little bearing on *Pruitt and Peterson's* adequacy under Rule 23(a)(4). No more discovery is needed to rule on Defendants' narrow motions. See *Alqaq v. CitiMortgage, Inc.*, 2014 WL 1689685, at *5 (N.D. Ill. Apr. 29, 2014) ("Plaintiff has not suggested what facts to be learned in discovery would be useful in making such class determination issues.

The grounds on which denial of class certification will be based do not require further factual discovery."). With the relevant discovery concluded, it is practicable, not premature, to decide the narrow issue before the Court.

The Court also notes that, if Defendants are correct at this point, the time and energy of class discovery will be saved. If, on the other hand, Plaintiffs are right, the parties will just proceed with class discovery, as they would have in the absence of the instant motion. As such, by bringing the motion now, the parties may save substantial costs. Furthermore, the circumstances of this case warrant testing the Named Plaintiffs at this time—three others dropped out after amendments to the complaint or their depositions (though the parties disagree on exactly why). In sum, the Court is capable of and justified in assessing the adequacy of the Named Plaintiffs at this point in the litigation.

**B. Adequacy of the Named Plaintiffs as Class Representatives**

Defendants make several arguments for finding the Named Plaintiffs inadequate class representatives. The first two—that Pruitt and Peterson are unfamiliar with and uninvolved in the case, and that Peterson is subject to individual defenses—are well-supported and persuasive. On those grounds, the Court finds that Pruitt and Peterson are inadequate class representatives and fail Rule 23(a)(4)'s requirements. Defendants' other arguments do not require finding the Named Plaintiffs to be inadequate class representatives, though some do support such a finding.

1.    Named Plaintiffs' Knowledge of and Involvement in the Case

Defendants argue that the Named Plaintiffs are so uninvolved in the litigation and know so little about it that they cannot adequately represent the absent class members. See [381, at 12-15]. An adequate class representative must have an understanding of the basic facts underlying the claims, some general knowledge of the case, and a willingness and ability to participate in

discovery. *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). Courts have repeatedly emphasized the importance of class representatives having reviewed court papers prior to filing, answering interrogatories (obviously in a truthful way), conferring with attorneys about the prosecution of the action, and understanding the facts of the case. *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1025 (N.D. Ill. 2017) (citing *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 503 (S.D. Tex. 2004); *Silver v. LA Fitness Int'l, LLC*, No. CIV.A. 10-2326, 2013 WL 5429293, at *2 (E.D. Pa. Sept. 27, 2013); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 505 (S.D.N.Y. 1976). Although this threshold for the basic responsibilities of proposed class representatives is modest, the Named Plaintiffs fail to meet it.

Peterson sought out his attorney in this case, Christopher Williams ("Williams"), to represent him in an unrelated matter regarding injuries Peterson sustained while on assignment for a different staffing agency. [367-2, at 35-39; 47-48.] Peterson does not know what a complaint is. [367-2, at 192] ("Q. Okay. I'm talking specifically in the context of a lawsuit. Do you know that a complaint is a pleading filed in court making allegations of legal wrongs. Do you know what that is? A. No."). During his deposition, Peterson would not give a clear answer to simple questions about whether he had seen the complaint in this case prior to its filing, but suggested that the answer was "no." See [367-2, at 194-97]. Peterson does not know if this case involves any defendants besides MVP, or if there is any basis to bring claims against any party besides MVP. [367-2, at 192.]

Besides Visual Pak, Peterson has not heard of the defendant client companies, [367-2, at 104-105], cannot think of any reason he would be suing them, [*id.* at 105], does not know whether there is any basis for suing them [*id.* at 192], did not intend to sue these companies and, prior to his deposition, did not know that they had been sued. [*Id.* at 148-49; 182]. Peterson also does not

recall filing EEOC charges against MVP or any other defendant or authorizing the filing of these charges or reviewing and signing them. [*Id.* at 126-129.]

When asked about the whether he authorized claims against certain client companies and why they had been named as defendants, Peterson repeatedly denied involvement in making those decisions and shifted all of the responsibility to his attorney. For example:

> Q. Okay. So you never authorized anyone to file a federal lawsuit accusing the Segerdahl Corp of directing MVP against sending in African-American workers; correct?
> MR. WILLIAMS: Object to the form.
> BY THE WITNESS:
> A. No.
> Q. You never gave Mr. Williams permission to make such an accusation in a federal lawsuit; is that correct?
> A. *I leave that to my attorney.*
> [367-2, at 151-152.]
>
> Q. Well, you never gave [your attorney] permission to sue anybody besides MVP in this lawsuit; correct?
> MR. WILLIAMS: Object to form.
> BY THE WITNESS: A. I don't know about anybody else.
> Q. Right. So if there are other parties that are defendants in this lawsuit that got sued by you, Ronald Peterson, you didn't give anybody permission to do that on your behalf, did you?
> MR. WILLIAMS: Object to the form.
> BY THE WITNESS: A. *Well, I leave everything to my -- my attorney*, so ...
> Q. Right. So if he sued anybody in this lawsuit besides MVP, he didn't do it at your direction, did he?
> MR. WILLIAMS: Object to the form.
> BY THE WITNESS: A. I leave legal work to my attorney.
> MR. ANACLERIO: That's not what I asked you. Can you read back the
> THE WITNESS: I don't know how to answer that.
> MR. ANACLERIO: Well, read the question back, and we'll see what --
> THE WITNESS: He can read the question back. It doesn't --
> MR. WILLIAMS: Read the question back. You can give your answer. He can read it back though.
> (Record read as requested.).
> BY THE WITNESS: A. I still wouldn't know how to answer that, because I leave all legal whatever to my attorney, so ...
> [367-2, at 189-190] (emphasis added).

11

[Q] Do you have any responsibility in your own estimation for the lawsuit that was filed here and who was sued in it?
MR. WILLIAMS: Objection to the form and harassing. But you can answer if you want.
BY THE WITNESS:
A. Like I said, I leave all -- everything to my attorney, so I'm not -- I'm not an attorney, so I don't know the procedure or anything to do it with that, so…
[367-2, at 192.]

While a class representative need not have an attorney's knowledge of the law or be a part of the minutia of legal strategy, he also "cannot simply shift [his] duties to class counsel." See, *e.g.*, *Physicians Healthsource*, 254 F. Supp. 3d at 1023–24. Yet Peterson admits that he did exactly that; his deposition testimony demonstrates that he has been happily allowing counsel to run the case with little or no involvement from him, which is inconsistent with a class representative's responsibility of monitoring class counsel and protecting the interests of absent class members. See *id.* ("Figurehead plaintiffs are not permitted.").

Peterson does not know basic information about the case, about the complaint, or even what a complaint is. He does not know what his lawyers are doing in the case—allegedly on his behalf—or why. This is not the level of knowledge and involvement required of a class representative and gives the Court no confidence that he is willing or capable of overseeing class counsel and representing the interests of absent parties in this matter.

Pruitt likewise does not know whether he sued several of the Client Companies in this case (specifically C&D, Visual Pak, or MGA). [367-5, at 94.] Nor does he know whether there is any basis for suing any of the Client Companies, or have any information to substantiate his claims that they discriminated against African Americans. [367-5, at 38 (Segerdahl); 57-59 (Georgia Nut Company); 61-63 (Medline); 91-93 (Visual Pak and C&D Recycling); 94 (MGA)].

"[T]aking an active and honest and attentive and role in discovery is one of the hallmarks of an otherwise adequate class representative," *Physicians Healthsource*, 254 F. Supp. 3d at 1023–

24, but Pruitt's participation in discovery also raises problems. Pruitt's first deposition in this matter, on March 7, 2017, halted through no fault of his own when he was too tired to continue because he had worked a shift beginning at 11 p.m. immediately before appearing at the deposition. The parties agreed to continue the deposition on April 10, 2017. On April 10, when Plaintiff and his attorney arrived at the deposition site, Plaintiff's counsel provided Defendants' attorneys with Pruitt's amended interrogatory responses, which asserted that he had sought work from MVP in the fall of September or October 2013. [367-8, at, *e.g.*, 12, 13, 15, 16.] In contrast, Pruitt had stated that he had sought work from MVP only in August 2014 in his first answers to Defendants' interrogatories [367-7, at 9, 11, 14, 17, 21, 23, 24, 27], in his EEOC charge [6-1, at 4, 7, 10, 13, 16], and in his March 7 deposition [367-3, at 65, 104-105]. At the same time, Plaintiff's counsel produced to defendants a set of documents apparently related to the dates Pruitt was seeking work at MVP. See [367-4, at 7].[5]

The record shows that Pruitt has made inconsistent statements about when he sought assignments from MVP, including during discovery, and either he or his counsel or both delayed in identifying and producing relevant documents. Furthermore, there is some indication that Pruitt was less than willing to participate in discovery fully and in good faith. For example, he testified:

> Q. And did anything stop you from pulling this document before March 7th, or asking HR for help pulling this document before March 7th? It's a simple question. Did anything stop you from pulling the document?
> A. No, but can I elaborate a little bit?
> Q. I'm actually not interested in elaboration.
> A. Okay. Well, then, I shouldn't be interested in answering no questions.

---

[5] The changes in Pruitt's testimony and supplemental production prompted one defense attorney to protest that a "deposition is not a take-home exam. And the fact that there was a suspension in the deposition because Mr. Pruitt was fatigued should not have allowed him to go review new documents, tender new answers to interrogatories, and give different testimony." [367-5, at 102-03.]

[367-5 at 126-127]. The record as a whole does not demonstrate an "active and honest and attentive role in discovery" that marks an adequate class representative. See *Physicians Healthsource*, 254 F. Supp. 3d at 1023–24.

Plaintiffs' citations to cases that allowed uninformed class representatives to stand are quite different from the facts in front of this Court. Plaintiffs rely most heavily on the 'extreme case' described in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). In *Surowitz*, the named plaintiff Dora Surowitz was a Polish immigrant with a very limited English vocabulary and practically no formal education who owned $2,000 worth of stock in the Hilton Hotels Corporation. *Id.* at 368. In December 1962, she received a notice stating that Hilton was buying back some of its own stock. *Id.* at 369. She asked for an explanation from her son-in-law, Irving Brilliant, a professional investment advisor with a law degree from Harvard Law School and a master's degree in economics from Columbia University. *Id.* at 368. During the time that Brilliant was investigating, the stock's value dropped, and the company stopped paying dividends. *Id.* at 369. Brilliant and another attorney, Walter Rockler, prepared a class action complaint, on Surowitz's behalf and with her as the named plaintiff, charging several Hilton officers and directors with fraudulently transferring money from the corporation to themselves. *Id.*

The defendants moved to dismiss, arguing that that Surowitz's deposition showed that "she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct, and in fact that in signing the verification she had merely relied on what her son-in-law had explained to her." *Id.* at 366. The district court dismissed the complaint, and the appeals

court affirmed, but the Supreme Court reversed, finding that Surowitz was an adequate class representative, writing:

> Her limited education and her small knowledge about any of the English language, except the most ordinarily used words, probably is sufficient guarantee that the courts below were right in finding that she did not understand any of the legal relationships or comprehend any of the business transactions described in the complaint. She did know, however, that she had put over $2,000 of her hard-earned money into Hilton Hotels stock, that she was not getting her dividends, and that her son-in-law who had looked into the matter thought that something was wrong. She also knew that her son-in-law was qualified to help her and she trusted him.

*Id.* at 370-371. The Seventh Circuit has called *Surowitz* an "extreme case," *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir. 1981), and the Named Plaintiffs' situations here are a far cry from Mrs. Surowitz's. There is no indication in the record that either Named Plaintiff is an immigrant, or has "practically no formal education," or has a grasp of the English language that is limited to "the most ordinarily used words." *Surowitz*, 383 U.S. at 368-370. Pruitt, in fact, testified that he has his GED and reads and writes proficiently. [367-5, at 14-15.] Peterson has two years of high school education [367-2, at 106-107], his deposition indicates that he can understand English, and he can write at least well enough to fill out an employment application [see 367-2, at 203-204]. Named Plaintiffs have also failed to identify a parallel figure to Mrs. Surowitz's son-in-law, someone whose abilities and diligence in helping overcome the class representative's deficiencies could give the Court reassurance that the class representative was no mere figurehead and the absent class members' interests were protected.

Nor is there something particularly complex about this matter that helps excuse the Named Plaintiffs' lack of knowledge and involvement. This case does not involve, for example, the intricacies of corporate finance at issue in *Surowitz*, or the complications of employee retirement law, see *Neil v. Zell*, 275 F.R.D. 256, 264 (N.D. Ill. 2011) (named plaintiffs did not need to know

"intricate details" of ERISA provisions and regulations that would be "a challenge for an experienced federal judge to make sense of").  Here, the Named Plaintiffs simply don't know the basics of the case, like who the defendants are, or why many of them are being sued, or whether they filed EEOC charges against those Defendants, or even what a complaint is.  Furthermore, unlike in *Surowitz*, there is evidence that the Named Plaintiffs' lack of understanding has "hindered * * *effective prosecution" of the case. *Neil*, 275 F.R.D. at 264.  Plaintiffs' attorneys say that they cannot "begin the process of cultivating a record on the Plaintiffs' attempts to obtain work through MVP" without more discovery from Defendants. [441, at 11.]  This assertion suggests that Named Plaintiffs are unable to help their attorneys with basic facts about their claims, or that perhaps Plaintiffs' attorneys have not yet sufficiently investigated their clients' cases, even after years of litigation, or both.  This problem has already manifested at least once, in Pruitt's revisions to interrogatory answers and late production of documents.

Plaintiffs argue that they know everything they need to for purposes of being class representatives, but Plaintiffs' citations show that they have an understanding (though not a particularly "keen" one) of only their own allegedly discriminatory experiences with some of the defendants, see [441, at 24-25], not that they understand the role of a class representative or basics of the legal process, like what a complaint is (despite having put their names to the purported class complaint in this case).  That is not sufficient to represent a class.  The Named Plaintiffs fail to meet the bar for knowledge of and involvement in a case, and therefore they are not adequate class representatives under Rule 23(a)(4).

### 2.    Unique or Individual Defenses

Proposed class representatives who are subject to individual defenses fail Rule 23(a)(4)'s adequacy requirement. See, *e.g.*, *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999) (citing

*J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994, 999 (7th Cir. 1980))
(holding that the "presence of even an arguable defense peculiar to the named plaintiff or a small
subset of the plaintiff class" may make the named plaintiff an inadequate representative of the
class); *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011) ("named plaintiffs who
are subject to a defense that would not defeat unnamed class members are not adequate class
representatives, and adequacy of representation is one of the requirements for class certification").
The presence of even an arguable defense peculiar to the named plaintiff may bring into question
the adequacy of the named plaintiff's representation. *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 459
(N.D. Ill. 2013) ("The Seventh Circuit has emphasized that a proposed class representative is
inadequate if she is subject to even an arguable defense not applicable to the class as a whole.")
(quoting *CE Design Ltd. v. King Architectural Metals, Inc*., 637 F.3d 721, 726 (7th Cir. 2011)).
This issue overlaps to some extent with the typicality of the class members' claims. See *Robles v.
Corporate Receivables, Inc.,* 220 F.R.D. 306, 309 (N.D .Ill. 2004) (finding that unique defenses
destroy typicality because "the defenses against the named representatives are likely to usurp a
significant portion of the litigant's time and energy, and there is a danger that the absent class
members will suffer if their representative is preoccupied with defenses unique to it") (internal
citations and quotations omitted).

Defendants make several arguments framed as defenses that are not really about defenses
to the claims in the complaint. Defendants' argument about the short amount of time the Named
Plaintiffs actually sought assignments at MVP and their availability to take assignments from MVP
may go to the Named Plaintiff's damages, but those are not defenses to claims of racial
discrimination.[6] Defendants' argument that the Named Plaintiffs terminated their contractual

---

[6] See [381, at 23-25]; [383, at 22-24].

relationships with MVP similarly fails.[7]  Plaintiffs have presented evidence, through Peterson and Pruitt's testimony that they completed applications for assignments from MVP, that both Peterson and Pruitt had contracts or potential contracts with MVP at some point during the class period.[8]  If they did not have a contractual relationship with MVP at other times during the class period, that may go to the scope and strength of Plaintiffs' Section 1981 claims, but is not a defense to them.

On the other hand, Defendants say that Peterson's claims are time-barred which, if true, is a defense to the claims. [381, at 27.]  Defendants argue that Peterson's claims fall under the two-year statute of limitations for Section 1981 pre-contract formation claims and that Peterson's EEOC charge and this lawsuit were filed outside of that period. *Id.*  Plaintiffs' response brief does not address this point, but they previously argued that a four-year statute of limitations applies. See [143].  Without deciding the merits of Defendants' position, it does seem that Peterson is at least arguably subject to the defense, and Plaintiffs give no reason to think otherwise.[9]  Because Peterson is subject to an individual defense that would defeat the claims, he is not an adequate class representative. See *CE Design Ltd.*, 637 F.3d at 726; *Cruz-Bernal v. Keefe*, 2015 WL 4232933, at *3 (N.D. Ill. July 13, 2015) (holding that "plaintiffs would not be fair and adequate representatives to the class because their claims are *Heck*-barred").

### 3.  Plaintiffs' Criminal Records and Credibility

[7] See [381, at 27-28].

[8] The Court expresses no opinion on whether or when Peterson or Pruitt had a contract with MVP or the Client Companies; the Court merely notes that Plaintiffs have presented some evidence that they did.

[9] The parties did dispute this issue earlier in the case.  Defendant Segerdahl moved to dismiss the Section 1981 claims, arguing that a two-year statute of limitations applied, and Plaintiffs responded that a four-year statute of limitations applied.  Judge Der-Yeghiayan denied the motion on the grounds that it was too early in the case to determine whether or when a contract had been formed and thus which statute of limitations applied. See [164, at 6.]

Defendants argue that both Named Plaintiffs have serious credibility problems that prevent them from being adequate class representatives.  Defendants identify three key problems, which the Court will address in turn: the Named Plaintiffs' criminal histories, their disclosures (or lack thereof) related to Chapter 7 bankruptcies, and their departure as named plaintiffs from the *Calderon* lawsuit. [381, at 32-33.]

A named plaintiff's credibility is relevant to his adequacy as a class representative under Rule 23(a)(4).  One who intentionally does not tell the truth about the case cannot be an effective class representative. *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) ("If he was lying and actually thinks the case worthless how could he have been an effective class representative even if he had no conflict of interest?"); *Norman*, 72 F.R.D. at 505 ("If plaintiff's *eminence grise* Dr. Norman is lying about how he came to the attorneys, then it is an unfit class representative."); see also *Physicians Healthsource*, 254 F. Supp. 3d at 1024 (plaintiff was not adequate class representative in part because he "allowed * * * false answers to be filed" and, when asked if correcting false answers was his responsibility or his lawyers', claimed not to have any "understanding on that").

Peterson has five felony convictions, and Pruitt has a felony conviction for fraudulent misuse of an employer's credit card and a misdemeanor conviction for theft.  [381, at 36.] Defendant says these convictions bear on the Named Plaintiffs' credibility (citing, *inter al.*, *Rodriguez v. Gossett*, 842 F.3d 531, 538 (7th Cir. 2016)), and block the Named Plaintiffs from meeting the integrity requirements for being a fiduciary of the absent class members.

Plaintiffs respond that Pruitt has not had a felony conviction in more than 10 years and was not convicted of any crimes during the class period. [462, at 19.]  Plaintiffs give no explanation or argument related to Peterson's criminal record, other than to say that it was not a barrier to

receiving work assignments from MVP. [462, at 20.] Plaintiffs note that criminal convictions do not automatically disqualify a person from serving as a class representative, citing *Wood v. Capital One Auto Fin., Inc.*, 2006 WL 6627680, at *3 (E.D. Wis. Sept. 19, 2006) (collecting cases demonstrating that prior criminal convictions are not *per se* disqualifying), but point to no authority supporting the position that *their* criminal histories should not disqualify them.

Though the Named Plaintiffs' criminal histories may bear on their credibility in general, neither party cites authority that being subject to a credibility challenge, even as a result of criminal convictions, necessarily disqualifies a person from being a class representative. Nor do Defendants explain why the Named Plaintiffs' specific criminal convictions have a bearing on the facts of this case in particular. *Cf. Physicians Healthsource*, 254 F. Supp. 3d at 1026 ("[T]he focus here is not on general credibility which leads to a further concern about the witness's credibility in his testimony relating to the case. To the contrary, the credibility concerns raised here go directly to the facts of the case that the plaintiff has brought.") Based on the record, the Court does not find Peterson's criminal record to be disqualifying. The same is true for Pruitt's criminal record. Pruitt's conduct in discovery, however, presents a different problem.

Before being deposed, Pruitt repeatedly and consistently said he sought assignments from MVP in August 2014. After his first deposition date and immediately before he sat for his second deposition date, Pruitt amended his interrogatory answers and said he first sought work from MVP in September or October of 2013. That difference, especially when sprung on Defendants between deposition dates, raises serious questions about, at best, Pruitt's diligence and commitment to giving complete responses in discovery. These credibility concerns "go directly to the facts of the case that the plaintiff has brought" and "counsel[] against finding the plaintiff an adequate class representative." *Physicians Healthsource*, 254 F. Supp. 3d at 1026. Pruitt's credibility problems,

20

especially in combination with the other grounds discussed in this opinion, support a finding that Pruitt is not an adequate class representative.

4.    The Named Plaintiffs' Bankruptcies

Defendants also argue that the Named Plaintiffs' conduct in and related to their bankruptcies shows a lack of credibility. Both Peterson and Pruitt filed for Chapter 7 bankruptcy protection without advising Plaintiffs' counsel and failed to disclose the claims in this lawsuit in their initial bankruptcy filings. See [381, at 32]. Defendants argue that this shows a lack of credibility unbecoming of class representatives. Plaintiffs respond that they didn't realize they needed to disclose this suit in their bankruptcy proceedings and did provide relevant information when asked. [441, at 21].

The allegedly-problematic bankruptcy disclosures are not a reason to find the Named Plaintiffs inadequate class representatives. Their conduct may undermine their credibility, or it may not, depending on whether the jury believes their explanations. But as with their criminal histories, there is nothing inherently disqualifying about the issue. Nor do the parties cite authority stating that it must be disqualifying here. The record related to the bankruptcy disclosures does not demonstrate that the Named Plaintiffs are inadequate class representatives.

5.    The Named Plaintiffs' Participation in Other Suits

Defendants also argue that the Named Plaintiffs' dropping out of another purported class action against MVP shows that they are unable to serve as class representatives here (though it is not clear why they frame this is a credibility issue). [381, at 32.] Defendants assert that both Named Plaintiffs dropped out of the *Calderon* lawsuit following discovery disputes without providing any justification for their actions (see *Calderon,* No. 15-cv-9626, at [218] (motion to file third amended complaint, which did not include Pruitt or Peterson as a named plaintiff)), and

21

that Pruitt did not even know that he was a plaintiff in that action or in the *QLS* lawsuit. [367-4, at 70 (Pruitt testifying that this suit, 16-cv-5079, was the only case in which he was a plaintiff); 97-98 (same)]. Plaintiffs deny that Peterson and Pruitt abandoned the *Calderon* unpaid wages case. They respond that Peterson and Pruitt were dropped from *Calderon* because the client companies that Peterson and Pruitt had interacted with were dismissed from the case; without those client companies in the case, the *Calderon* named plaintiffs did not need to include Peterson and Pruitt. [441, at 23].

Though Defendants insist that Pruitt and Peterson left the *Calderon* suit "without providing any justification," [381, at 32], Defendants provide no evidence that Peterson and Pruitt were dropped as named plaintiffs because they were inadequate class representatives. Nor do Defendants cite authority for their position that merely being dropped as a class representative in one suit renders that person inadequate in other suits. While Defendants' discussion of other class actions is distressing—particularly Pruitt's lack of awareness that he was a plaintiff in *Calderon* and *Pruitt v. Quality Labor Services, et al.*, 16-cv-9718—the evidence of the Named Plaintiff's participation in other suits does not necessitate a finding that they are inadequate class representatives in *this* suit.

<u>6. Named Plaintiffs' Membership in the Class</u>

Plaintiffs seek to represent a class defined as: "All African-Americans who sought work assignments through the MVP Waukegan Branch Office and were eligible to work at one or more of the Defendant Client Companies at any time between May 9, 2012, and the date of judgment and who, on one or more occasion, were not assigned to work at one of the Defendant Client Companies by MVP." [118, at ¶ 74.] Defendants argue that as of early 2014, the Named Plaintiffs were not seeking work from MVP and would have been unable to take assignments from MVP,

and that the Named Plaintiffs are therefore not members of the class and inadequate class representatives. [381, at 23-24]. Plaintiffs point out that the Named Plaintiffs each sought assignments through MVP at various times in 2014, which is within the proposed class period. See [367-2, at 75-78; 93-94]; [367-3, at 56-57, 65]. That timing puts the Named Plaintiffs within the proposed class, and Defendants' argument may be rejected on that basis.

### 7.    Named Plaintiffs' Claims

Defendants argue the Named Plaintiffs actually have different claims than the purported class. The Named Plaintiffs sought job assignments through MVP but were not selected to work at one of the Client Companies. Thus, according to Defendants, the Named Plaintiffs' claims are actually for the unpaid wages they never received on the days they were not selected to work, unlike the race discrimination claims that the purported class makes [381, at 25-26], and if the Named Plaintiffs are not members of the class, they cannot adequately represent it.

Defendants are wrong. If the Named Plaintiffs showed up but were not selected to work, they may be owed wages under Illinois law. As Defendants themselves pointed out, that issue is the subject of a separate lawsuit. See *Calderon*, No. 15-cv-9626. But if the Named Plaintiffs were not selected to work *because of their race or ethnicity*, they may have a remedy under federal anti-discrimination law. The unpaid wages claims and the racial discrimination claims are separate, and not mutually exclusive. The complaint in this suit does plead discrimination, for both the Named Plaintiffs and the rest of the purported class.

## IV.    Conclusion

For the reasons explained above, For the reasons set forth below, Defendants' motions to deny class certification [449, 450, 451, 452] are granted. Plaintiffs are given until July 10, 2020 to

file a status report stating whether they intend to dismiss the case or proceed on behalf of the two named plaintiffs individually.  If no status report is filed, the case will be dismissed.


Dated: June 8, 2020

_____
Robert M. Dow, Jr.
United States District Judge

24