IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERELL PRUITT and RONALD PETERSON, on behalf of themselves and other similarly situated laborers, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-5079 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, THE SEGERDAHL CORP., VISUAL PAK COMPANY, MEDLINE INDUSTRIES, INC., and METROPOLITAN GRAPHICS ARTS, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Plaintiffs' motion for reconsideration is denied. Plaintiffs are given until February 15, 2021 to file a status report stating whether they intend to dismiss the case or proceed individually.

**I.     Background**

Plaintiffs' purported class action against staffing agency MVP and the companies that use its temporary workers has gone through several iterations since its filing on May 9, 2016, the most recent of which is a second amended class action complaint filed on January 13, 2017 [118]. Defendants moved to deny class certification, see [449, 450, 451, 452], arguing that the two remaining named plaintiffs—Derell Pruitt and Ronald Peterson—were not adequate class representatives. After the parties briefed the motion and filed 13 exhibits totaling approximately 1,000 pages, the Court, in an order dated June 8, 2020, determined that Pruitt and Peterson were not adequate class representatives, granted the motions to deny class certification, and ordered

Pruitt and Peterson to file a status report stating whether they intended to pursue individual claims. See [469]. A description of the facts giving rise to the complaint and relevant to the motion to deny class certification is set forth in the Court's previous opinion [469]. The Court assumes familiarity with those facts.

Plaintiffs then filed a motion to reconsider, arguing that (1) the Court's June 8, 2020 order mistakenly said that Plaintiffs did not address the statute of limitations issue, which, correctly analyzed, does not bar Peterson from serving as a class representative; (2) the Court's order failed to consider certain evidence in the record that bears on Pruitt and Peterson's adequacy as class representatives; and (3) reconsideration is warranted by the negative impact that denying class certification would have on absent class members.

## II.     Legal Standard

The Seventh Circuit has long cautioned that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). This is because the court's orders are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Geraty v. Village of Antioch*, 2015 WL 127917, at *3 (N.D. Ill. Jan. 8, 2015) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015) (quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)). Manifest errors occur "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191.

A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). A party seeking reconsideration "bears a heavy burden," *Patrick*, 103 F. Supp. 3d at 912, and the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *Darvosh v. Lewis*, 2015 WL 5445411, at *3 (N.D. Ill. Sept. 11, 2015) (citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270).

**III.    Analysis**

The Court acknowledges an error in its analysis of the statute of limitations issue, which it corrects below, but which does not change the outcome of the June 8, 2020 order. Other than that correction, Plaintiffs' motion does not establish any manifest error in the Court's previous order that warrants reconsideration. Plaintiffs do not argue that the Court misunderstood the evidence, nor do Plaintiffs present newly discovered evidence. Instead, Plaintiffs primarily point to evidence in the record that they did not cite in briefing the motion to deny class certification, a move that neither supports reconsideration nor, if the substance of the evidence were considered, would change the Court's conclusions. Finally, the argument regarding absent class members does not make Plaintiffs into adequate class representatives.

**A.    Statute of Limitations**

The Court's June 8, 2020 order did make a mistake in its discussion of the statute of limitations issue, though one that does not change the Court's decision. The error will be easiest to see, and correct, if the Court first reviews the parties' arguments regarding the statute of limitations from the prior class certification briefing.

3

Defendants' motion to deny class certification made two relevant arguments. First, Defendants asserted that Peterson's Title VII claims are time-barred because he filed the EEOC charge more than 300 days after he sought work from MVP. [367 at 12.] Second, Defendants argued that Peterson's Section 1981 claims are time-barred because the two-year statute of limitations for pre-contract-formation claims applies and this case was filed more than two years after Peterson sought work from MVP. [*Id.*]

Plaintiffs responded that the appropriate statute of limitations is four years, for Section 1981 post-contract-formation-claims, because they did form contracts when they signed up for work at MVP. [462 at 25, citing *Dandy v. UPS*, 388 F.3d 263, 269 n.4 (7th Cir. 2004).] Plaintiffs also sought more discovery, "to clarify whether the two current Named Plaintiffs can bring failure to assign claims within a four-year limitations period." [*Id.* at 426.] Plaintiffs offered further argument that, in the context of staffing agencies, there is no functional difference between characterizing claims as pre- and post-contract-formation. [*Id.* at 27.] Plaintiffs mention Title VII only in a general assertion that "Plaintiffs will likely be able to satisfy Rule 23's requirements for their Title VII claims and Section 1981 claims." [*Id.* at 25.] Defendants' reply notes that Plaintiffs' response "is silent as to the fact that Peterson's Title VII claims are time-barred." [457 at 10.]

The Court's June 8, 2020 order concluded that Peterson was arguably subject to a statute of limitation defense, which made him unsuitable to serve as a class representative. [469 at 18.] The Court also wrote, "Defendants argue that Peterson's claims fall under the two-year statute of limitations for Section 1981 pre-contract formation claims and that Peterson's EEOC charge and this lawsuit were filed outside of that period…. Plaintiffs' response brief does not address this point, but they previously argued that a four-year statute of limitations applies." *Id.* As Plaintiffs' motion for reconsideration points out, that was incorrect. [472 at 15-16.] Plaintiffs' response to

the motion to deny class certification did address the statute of limitations for Section 1981 claims. See [462 at 26-27.] So the Court will take this opportunity to correct its error.

First, by failing to respond to Defendants' argument on the Title VII statute of limitations, Plaintiffs forfeited the argument. See, *e.g.*, *MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332, at *3 (N.D. Ill. Dec. 6, 2006) (citing *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643, n7 (7th Cir. 2006)) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."). Peterson's Title VII claims are at least arguably time-barred, making him an inadequate class representative for a class with Title VII claims.

Second, Peterson is arguably subject to a two-year statute of limitations on the Section 1981 claims, if that is the limitations period that applies. But which is the correct limitations period to apply—the two-year period for pre-contract-formation claims or the four-year period for post-contract-formation claims—is not clear at this point in the litigation. Because the Court resolves the motion on other grounds, and because this issue may come up if Peterson pursues individual claims, the Court declines to further opine the statutes of limitations with regard to Section 1981 claims.

**B.      Reconsideration on Other Topics is Not Warranted**

The "limited function" of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015) (quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)). Plaintiffs do not argue that the Court made any manifest error of law or that they have newly discovered evidence to present. Nor do Plaintiffs really argue that the Court made a manifest error of fact, because the motion does not assert that the Court "patently

misunderstood" or misapprehended the evidence. *Bank of Waunakee*, 906 F.2d at 1191. Rather, Plaintiffs argue that the Court's decision did not consider certain evidence some of which Plaintiffs previously submitted but did not previously cite, and that the Court should now consider that evidence and come to a different conclusion.

1. Plaintiffs' New Citations Do Not Warrant Reconsideration

Plaintiffs' briefing on the motion for reconsideration cites the same exhibits submitted with the briefing on the motion to deny class certification, but cites different portions of those exhibits.[1] These are all factual issues that Plaintiffs could have raised in their response to the motion to deny class certification, but did not. As such, they cannot support a motion for reconsideration. *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269-70 (motion to reconsider "is not an appropriate forum for * * * arguing matters that could have been heard during the pendency of the previous motion"). As the Seventh Circuit has observed, judges are not like pigs, hunting for truffles buried in briefs or the record. *Hoosier v. Greenwood Hospitality Mgmt. LLC*, 32 F. Supp. 3d 966, 972 (N.D. Ill. 2014) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) and *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006)). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in his client's favor." *Dal Pozzo*, 463 F.3d at 613. Realizing in retrospect that a different argument or different citations may have led to a better outcome does not equate to the Court misapprehending or misunderstanding facts, and (aside from the statute of limitations issue addressed above) Plaintiffs' brief does not establish that the Court made any manifest error that warrants correcting. The Court was not required to hunt through the exhibits

---

[1] For example, Plaintiffs' motion for reconsideration cites Peterson's March 22, 2017 deposition at 57:6-58:23 and 103:5-104:9. [472 at 13.] While Plaintiffs' earlier response brief to the motion to deny class certification cites that same deposition it refers to different sections. [441 at 24, citing Peterson's March 22, 2017 deposition at 174:2-15; 177:3-179:9; 189:10].

for the best evidence to support Plaintiffs' positions, and declining to do so then does not warrant reconsideration now.

Furthermore, Plaintiffs are wrong that the Court did not consider much of the evidence that they previously presented. The Court did consider it, but much of it had little bearing on the issues raised by the motion to deny class certification, so Plaintiffs' citations did not feature heavily in the Court's opinion. One of the key issues in the motion to deny class certification was whether Pruitt and Peterson were active and involved in the litigation, or mere figureheads. Plaintiffs' response brief cited, and the motion for reconsideration elaborated on, evidence that the proposed class representatives sought and were available for work assignments from MVP and its client companies. See, *e.g.*, [441 at 17 n. 16]. But Defendants did not argue that Plaintiffs never sought work from MVP or were never available for it,[2] and that was not one of the issues presented to the Court. So the Court considered those facts to the extent that they were helpful to deciding the relevant issue—see, *e.g.*, [469 at 22-23 "(Plaintiffs point out that the Named Plaintiffs each sought assignments through MVP at various times in 2014, which is within the proposed class period. See [367-2, at 75-78; 93-94]; [367-3, at 56-57, 65].)]—but because they were not critical to the issues the Court needed to decide, the Court did not repeat each of Plaintiffs' citations.

Plaintiffs also cited several parts of the deposition transcripts to support the argument that Pruitt and Peterson's claims were typical of the proposed class. See, e.g., [441 at 18 (citing Pruitt's testimony about signing in for work at MVP and seeing Hispanic individuals arrive after him, complete employment applications, and get sent out on work before him); at 20 (citing Peterson's testimony about Hispanic laborers being assigned to work before African-American laborers who had been in the office longer); at 24 (citing Pruitt's testimony about the time he and other African

---

[2] Plaintiffs do, however, dispute *when* Plaintiffs sought and were available for work, which is part of the controversy surrounding which statute of limitations applies.

American workers were sent on a bus to MVP's client company but were passed over and sent back without pay)]. But that argument missed the mark, too. Defendants did not argue that the named plaintiffs' claims were not typical; rather, they contended that Pruitt and Peterson were not adequate class representatives. Again, because the evidence was not critical to the issues to be decided, the Court did not discuss it in the detail that Plaintiffs' response brief did.

        2.     The Court Did Consider Relevant Evidence Regarding Plaintiffs' Involvement in the Litigation

Turning to the key issue of the named plaintiffs' adequacy to serve as class representatives, Plaintiffs' response brief does contain citations to relevant facts, many of which the Court included in its opinion, albeit without Plaintiffs' optimistic spin. Plaintiffs acknowledge that Peterson answered deposition questions about why he had sued certain defendants by saying that he left litigation strategies to his attorney [441 at 24, citing 441-4, 3/22/17 Peterson Dep. at 174:2-15], and when asked why certain companies were included in his EEOC complaint, he said that he left legal work to his attorney [*id.*, citing 441-4, 3/22/17 Peterson Dep. at 189:10]. The Court discussed this exact material in depth. [469 at 11-12.] Plaintiffs also asserted that Peterson understood his personal experiences, what happened to him when he sought work from MVP. [441 at 24, citing 441-4, 3/22/17 Peterson Dep. at 177:3-179:9.] But personal knowledge of the underlying incident—in this instance Peterson's testimony about getting sent to Visual Pak but not getting selected for work—has limited bearing on whether he is adequately involved in the purported class action bearing his name, which is why the Court did not dwell on that individual experience. Instead, the Court relied on Peterson's refusal to give a clear answer to a simple question about whether he had seen the complaint in this case prior to its filing, his ignorance of the defendant client company and why they were defendants, his lack of intent to sue the client companies, and

his lack of recollection of filing EEOC charges, authorizing anyone to file EEOC charges for him, or reviewing or signing the charges. [469 at 10-11.]

Plaintiffs' response to the motion to deny class certification similarly asserted that Pruitt understood his personal experiences when he sought work from MVP. [441 at 24, citing 441-3, 6/19/17 Pruitt Dep. at 101:1-103:6]. Again, while that is an important part of being a class representative, it alone is not sufficient, and—crucially—it is not very useful for determining whether Pruitt was sufficiently involved in the purported class action bearing his name or was a mere figurehead. More helpful to that determination was the evidence the Court addressed: that Pruitt did not know whether he had sued several of the client companies, made inconsistent statements when about when he sought assignments from MVP, delayed in identifying and producing relevant documents, and did not demonstrate an active, honest, and attentive role in discovery. [469 at 12-14.]

Plaintiffs' only other citation regarding Pruitt is not a pincite, but a reference to 30 pages of deposition transcript, which is almost all of Plaintiffs' counsel's examination of Pruitt at the June 19, 2017 deposition. [441 at 24, citing 441-3, 6/19/17 Pruitt Dep. at 101:1-131:22]. The Court was not required to sort through that 30 pages to find out whether any nugget of testimony might support Plaintiffs' arguments—again, judges are not pigs hunting for truffles. *Hoosier*, 32 F. Supp. 3d at 972 (quoting. *Dunkel*, 927 F.2d at 956 and *Dal Pozzo*, 463 F.3d at 613). Rather, it was counsel's job to make it easy for the court to rule in his client's favor, and counsel's failure to do so is not a manifest error by the Court warranting reconsideration. Additionally, the Court *did* review and consider testimony from this section of Pruitt's deposition, including Pruitt's retort to defense counsel that he need not be interested in answering deposition questions if he could not

say whatever he wanted in response. [469 at 13-14, citing 367-5 at 126-127, 6/19/17 Pruitt Dep. at 129:24-130-:8.]

In sum, the Court *did* consider the facts Plaintiffs cited in their response brief to the motion to deny class certification, and the Court incorporated those facts into its opinion, to the extent that those facts were relevant and helpful to deciding the issues before the Court. That extent was limited, which is why so few of Plaintiffs' citations are reproduced in the Court's opinion.

### 3. Plaintiff's Case Authorities Do Not Support Reconsideration

Plaintiffs cited seven cases as part of an argument that courts can reconsider decisions in light of evidence that parties could have presented before, when that evidence is "consequential to the issue at bar." [472 at 20.] Each of these cases is distinguishable from the one before this Court, and even taken together, the cases neither require nor support reconsideration in this instance. The Court will discuss each case individually and then turn to considering what, if anything, can be drawn out of reading the cases together.

#### a. *Travis v. City of Chicago*

The court in *Travis* reconsidered its denial of class certification because the plaintiff amended her complaint in ways that "eliminate[d] some individualized reasons for delay that previously prevented common issues from predominating over individual issues" and "narrow[ed] the definition of the class so as to eliminate material factual differences among the potential plaintiffs." *Travis v. City of Chicago*, 1984 WL 15709, at *2 (N.D. Ill. Sept. 16, 1984). In other words, the court reconsidered its prior decision because the plaintiff fixed the problems in the complaint that motivated the previous denial of class certification. (At least some of them; the court still denied class certification, but because the numerosity requirement was not satisfied. *Id.*)

10

Here, Plaintiffs have not filed an amended complaint that fixes problems with the prior version, so *Travis* yields them little.

                b.        *Meyer v. ERJ, Inc.*

*Meyer* involved new evidence, specifically, a new affidavit that (1) revealed ambiguity in a portion of the complaint critical to the court's previous decision, and (2) resolved that ambiguity such that it was clear the court had misapprehended the nature of the transaction at issue in the case. *Meyer v. ERJ, Inc.*, 1997 WL 626036, at *2 (N.D. Ill. Sept. 30, 1997). The new evidence and the court's misunderstanding of the facts alleged in the complaint warranted reconsideration in *Meyer*, but Plaintiffs here have identified neither new evidence nor any misunderstanding by the Court.

                c.        *Figueroa v. City of New York*

In *Figueroa,* the district court agreed that, in deciding the summary judgment motion, it had overlooked certain facts and that reconsideration was warranted because those facts were significant to "an essential element of a hostile work environment claim, such evidence or lack thereof 'might reasonably be expected to alter the conclusion reached by the court.'" *Figueroa v. City of New York*, No. 00 CIV. 7559 (SAS), 2002 WL 31163880, at *1 (S.D.N.Y. Sept. 27, 2002), *aff'd*, 118 F. App'x 524 (2d Cir. 2004) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Though the court says it "overlooked" critical evidence, it does not say whether the defendant's original summary judgment brief drew attention to the evidence and the court missed it, or whether the evidence was in the record submitted at summary judgment but the defendant did not bring it to the court's attention until the motion for reconsideration. The latter would have to be true for *Figueroa* to be parallel to this case. And even if it were, the *Figueroa* court's choice

to reconsider its prior decision is not binding on this Court, nor is it persuasive in the face of the general disfavor of motions for reconsideration, see *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), and the Seventh Circuit's repeated statements that courts need not scour the record for helpful tidbits and do attorneys' jobs for them. Furthermore, the *Figueroa* court reconsidered in part because its prior decision had relied on irrelevant evidence, but Plaintiffs make no such allegation here, further undermining *Figueroa's* applicability or persuasiveness in this instance.

d.      *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*

In *Kelwin*, the court reconsidered its dismissal of a plaintiff's claims because it had not realized there was a material difference between the version of the Program Guide—one of a number of documents establishing a contractual relationship between the plaintiff merchants and the defendant credit card processor—that a plaintiff submitted and the version that the defendant submitted. *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, No. 17CV6255NGGCLP, 2019 WL 6134164, at *2 (E.D.N.Y. Nov. 19, 2019). The plaintiff's version of the Program Guide was a general "sample" version that contained provisions that, if applicable, nullified the plaintiff's claims. *Id.* But the version of the document that the defendant submitted was specific to that plaintiff and lacked those provisions. As a result, the court found reconsideration warranted and reinstated that plaintiff's claims. *Id.* Essentially, the court had dismissed that plaintiff's claims based on an inapplicable set of facts and corrected that error by considering the applicable facts and revising its previous decision. Plaintiffs here do not assert that the Court considered inapplicable facts, so *Kelwin* does little to help their cause.

e.      *Tamayo v. City of New York*

The court in *Tamayo* dismissed some of the plaintiff's Title VII claims because his charge to the New York State Division of Human Rights ("NYSDHR") did not result in a right-to-sue letter. *Tamayo v. City of New York*, No. 02 CIV. 8030 (HB), 2004 WL 725836, at *4 (S.D.N.Y. Mar. 31, 2004). After the dismissal order was entered, the plaintiff for the first time produced the letter to the court and moved for reconsideration. The court, with "tongue in cheek," decided to call this a factual matter that it had overlooked and vacated its prior dismissal of the plaintiff's Title VII claims. *Id.* The *Tamayo* court's exercise of discretion, in addition to being non-binding, does little to inform this Court of how to address Plaintiff's motion for reconsideration. The *Tomayo* court made a decision based on a procedural defect in the plaintiff's case, and corrected the decision when the plaintiff sheepishly demonstrated that it did not in fact suffer from that particular defect. Here, Plaintiffs are not offering to cure any defect, procedural or otherwise, that underpinned the Court's decision by offering a document that they could have filed earlier. Rather, they are simply pointing to different evidence in the filings that they think would lead the Court to a conclusion more favorable to their clients. At best, *Tamayo* is an example of a different district court that was extremely generous in deciding it had "overlooked" a fact in circumstances not that similar to this case.

### f. *Bodenstab v. J.R. Blank & Assocs., Inc.*

In *Bodenstab*, the court reconsidered its prior ruling because "some of the disputed records" that the ruling rested on "were most strongly relied on in the defendants' reply memorandum" and "the plaintiff arguably did not have a full opportunity to challenge the defendants' evidence" before the court ruled on the summary judgment motion. *Bodenstab v. J.R. Blank & Assocs., Inc.*, 1991 WL 33647, at *2 (N.D. Ill. Mar. 8, 1991). As a result, the court agreed to "consider the 'newly discovered evidence' produced by the plaintiff in support of his motion for reconsideration." *Id.*

(This appears to be a mix of documents that the plaintiff could have filed earlier and arguments about the documents defendants had cited in their reply brief. See *id.* ("Bodenstab challenged the former citation by producing a copy of the invoice which indicated that the program sold was File–AID BATCH and not File–AID/XE. As to document C014797, Bodenstab simply stated that the document did not indicate any sales of File–AID/XE in June or July 1985.")). Here, Plaintiffs are not challenging documents or evidence that Defendants cited for the first time in their reply brief. They simply want to cite different evidence in response to points that Defendants raised in their motions to deny class certification, a position not supported by the decision or reasoning in *Bodenstab*.

g.     *Miller v. Safeco Ins. Co. of Am.*

*Miller v. Safeco* dealt with calculating prejudgment interest under a state law that set out requirements for paying interests on amounts that insurance companies owed to their insureds. In relevant part, the district court determined that the plaintiffs were entitled to interest on the full amount they were owed "beginning 30 days after the coverage finding." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 814 (7th Cir. 2012). The plaintiffs filed a Rule 59(e) motion arguing that they were entitled to interest on the initial claim—which was only part of the amount that the later coverage determination awarded—starting 30 days after they submitted their initial claim. *Id.* at 814. The district court granted the motion, finding that the plaintiffs were not presenting an entirely new argument or legal theory, rather an argument that they could have previously made but were not *required* to have made earlier. *Id.* The Seventh Circuit determined that the district court did not abuse its discretion in granting the motion, saying that it "fixed an error that * * * slipped into the case." *Id.* at 813.

14

Plaintiffs in this case may not be presenting *entirely* new arguments or legal theories, but unlike the plaintiffs in *Miller*, they are pointing the Court to things they could and should have addressed earlier. Plaintiffs have provided no reason that their response to the motion to deny class certification could not have included the citations they now point to, and *Miller* does not support the proposition that a party who loses a motion should get a second bite at the apple with citations to different evidence. The district court in *Miller* "didn't believe [the plaintiffs] should be penalized for wrongly computing prejudgment interest before judgment was entered," *id.* at 814 (citation omitted), but parties *are* expected to make their best arguments and cite their best evidence in briefs before the court rules on a motion.[3] Having a chance to calculate, or recalculate, prejudgment interest after the judgment makes sense; having the chance to redo citations after the court rules on a motion does not. In contrast to *Miller*, Plaintiffs do not identify any error that slipped into this case, except perhaps that they wish they had cited different evidence in their response brief, but to the extent that is an error, it is not the Court's, and it is not incumbent on the court to fix it.

> h.  *Considering the Cases Together*

Plaintiffs urge the Court to read these cases together for the proposition that "facts or arguments that may not have been considered or addressed in the original briefing warrant renewed consideration when such information is consequential to the issues at bar and presented to the court via a motion for reconsideration." [472 at 20.] It is possible to draw that theme out of the non-

---

[3] See generally *Cranberry Growers Coop. v. Layng*, 930 F.3d 844, 856–57 (7th Cir. 2019) citing *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)) (the parties "are responsible for advancing the facts and arguments entitling them to relief"); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 357 (2006) ("[T]he responsibility for failing to raise an issue generally rests with the parties themselves."). Hence also the requirement that motions for reconsideration raise *new* evidence and avoid rehashing matters that were or could have been raised previously. See *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996).

binding precedent Plaintiffs cite. But Plaintiff's framing over the issue elides over a few issues that are critical to this particular motion for reconsideration. Some of the facts Plaintiffs cited in the original briefing were not significant, or even relevant, to the issues before the court, so they were not addressed in detail. Some of the facts Plaintiffs cite in the motion for reconsideration *could* have been cited in Plaintiffs' response brief, but Plaintiffs chose not to cite them, perhaps because they misunderstood that the issue was the proposed class representatives' adequacy rather than the typicality of their claims, or perhaps because they hoped (albeit unsuccessfully) to shift the argument away from adequacy and toward typicality. If so, it was Plaintiffs, not the Court, that failed to consider or address certain facts. As such, the Court cannot find that *it* patently misunderstood facts or misapprehended a party, and Plaintiffs have not met the burden required to show that reconsideration is appropriate.

### C. Consideration of Plaintiffs' New Citations Does Not Warrant a Different Outcome

Even if Plaintiffs were right that the Court could and should review the citations they now point to, such review would not disturb the Court's prior conclusions. The motion for reconsideration points the Court to different evidence, or makes additional arguments, in four main areas: (1) Peterson and Pruitt knew enough about their own experiences and did not need to know more about the client companies; (2) Pruitt's unfamiliarity with legal terms and processes does not disqualify him from serving as class representative; (3) Pruitt truthfully answered questions during his deposition; and (4) Pruitt not knowing the exact dates he sought work should not disqualify him. The Court addresses each issue in turn.

#### 1. Plaintiffs' Knowledge of Their Experiences and the Client Companies

Plaintiffs provide many additional citations to evidence that they say shows that they know the facts of their individual experiences of discrimination. See [472 at 12-14.] Plaintiffs also argue that Pruitt and Peterson could not be familiar with the client companies that were defendants, because the client companies rarely if ever selected them for work. [*Id.* at 12 (Pruitt) and 13 (Peterson).]

The Court did not and does not expect Peterson and Pruitt to know details of the inner workings of the client companies. Of course, someone never selected by a client company for work would not know much, or perhaps anything, about the client company, even that it received workers from MVP. But unfamiliarity with the client companies was not the problem the Court addressed in its previous order; the problem was Peterson and Pruitt's unfamiliarity with the *defendants in this case.* Peterson and Pruitt did not know what companies they had sued or why those companies were defendants. See [469 at 10-11 (detailing Peterson's lack of knowledge) and 12 (Pruitt's lack of knowledge). That is not an issue that can be resolved by detailing the proposed class representatives' personal experiences at MVP. It is something that they could have come to know by reading the complaint, conferring with their attorneys, or by taking an active role in the litigation—in other words, by acting the way a class representative is supposed to act.

Additionally, Plaintiffs further details about their individual experiences with MVP do not rebut the other evidence that the Court relied on. For instance, Peterson did not recall filing EEOC charges against several defendants, or authorizing, reviewing, or signing those charges [469 at 10-11, citing 367-2 at 126-129, 3/22/17 Peterson Dep. at 125:7-128:14], and Peterson repeatedly admitted that he had shifted his duties to class counsel [*id.* at 11-12, citing 367-2 at 151-52, 192, 3/22/17 Peterson Dep. at 150:22-151:24; 180:10-191:22.].

Though the bar is not high, a class representative should have read the complaint and should know who he is suing. *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1025 (N.D. Ill. 2017) (citing *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 503 (S.D. Tex. 2004); *Silver v. LA Fitness Int'l, LLC*, No. CIV.A. 10-2326, 2013 WL 5429293, at *2 (E.D. Pa. Sept. 27, 2013); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 505 (S.D.N.Y. 1976)). A class representative should know who is involved in the litigation and, at least at a high level, why those parties are involved. If a class representative doesn't know why he is suing a particular defendant, how can he adequately represent absent class members' interests with regard to that defendant? This is the crux of Plaintiffs' problem: they did not know what was happening in the litigation, because they were not involved in the litigation, because they surrendered their responsibilities in the litigation to proposed class counsel.

### 2. Unfamiliarity with Legal Terms and Processes

A closely related issues is Plaintiffs' argument that even if Pruitt did not know the term "complaint," he nevertheless showed an understanding of his role and responsibilities as class representatives. [472 at 16; 476 at 5-6.][4] Pruitt did recognize a document during his deposition as "the actual lawsuit." [472-2 at 7, 6/19/17 Pruitt Dep. at 35:17-24, referring to deposition exhibit I.] The context of Pruitt's answers suggests he is discussing the complaint, but because Plaintiffs did not attach or otherwise draw the Court's attention to deposition Exhibit I, the Court cannot confirm that. But Pruitt also could not recall whether he reviewed the complaint before it was filed, which undermines Plaintiffs' argument that he is an active and involved class representative.

Pruitt also recognized a document that his attorney identified as an EEOC Charge [472-2 at 3-6, 6/19/17 Pruitt Dep. at 29:3-30:7] though the exhibit was not attached to Plaintiffs' brief.

---

[4] Plaintiffs' reply brief refers to "Peterson's deposition" for this point, but it cites the motion for reconsideration at 11-12, which cites only Pruitt's deposition. See [472 at 11-12.]

The Court, however, disagrees with the characterization that he "spoke to the factual allegations underpinning it" [472 at 16]—Pruitt's answers suggested that he did not have personal knowledge of some of the assertions in the EEOC charge and that they were, at best, inferences—and none of his answers demonstrate the "familiarity with the legal process" that Plaintiffs' motion for reconsideration asserts. [472 at 16.]

Plaintiffs' citations also do not support the claim that Pruitt "spoke at length about his role in another case" and "demonstrate[ed] a thorough knowledge of legal vocabulary, the EEOC process and claims, and his responsibilities." [472 at 16, citing 441-3 at 11, 6/19/17 Pruitt Dep. at 123:4-126:7.] In that section of the deposition, Pruitt identifies himself and others as named plaintiffs in a purported class action against a different defendant, *id.* at 122:14-123:12, agrees that he authorized the filing of that complaint, *id.* at 123:13-15, twice denies that he helped prepare the complaint in that case, *id.* at 123:16-22, and gives a confusing set of answers about whether he intended to sue certain defendants, *id.* at 123:23-124:9. That testimony is a mixed bag for Plaintiffs at best. The remainder of the section that Plaintiffs cited is Plaintiffs' counsel reading statements from the EEOC charge, *id.* at 1234:15-125:16, Pruitt agreeing that he understands that the document is a finding by the EEOC, *id.* at 125:16-20, and a hypothetical about what defendants are "reasonable" to include in a lawsuit. Even if all of that testimony were admissible—and the Court doubts that it is[5]—it says nothing about Pruitt's responsibilities as a class representative, and the Court strains to see much, if anything, related to legal vocabulary, the EEOC process, or the claims in that case.

In short, none of Plaintiffs' arguments or evidence in the motion for reconsideration address the Court's concerns about Peterson's and Pruitt's understanding of the role of class

---

[5] For example, the testimony may run afoul of rules regarding relevance and opinion testimony.

representatives, including reviewing papers before filing, conferring with their attorneys about the prosecution of the case, or answering interrogatories truthfully, all of which the Court also discussed in its order.  [469 at 9-14]; see also *Physicians Healthsource*, 254 F. Supp. 3d at 1025.

### 3. Dates of Work

Plaintiffs say that Pruitt changed his story about the dates he sought work as a result of receiving documents that he gathered after the first time he sat for his deposition, which they frame as helpful participation in discovery.  But Plaintiffs do not explain why Pruitt consistently gave one date before his March 2017 deposition but a different date afterwards, or why Pruitt did not search for and produce those documents before his March 2017 deposition, or why he amended his interrogatory answers and produced new documents on the morning of his second sitting for a deposition, rather than any time before that.  To take an example that the parties addressed in Pruitt's June 2017 deposition, one document Pruitt used to establish the dates of his prior employment, and consequently when he sought work from MVP, came from the Human Resources department at a prior employer.  [367-5 at 124-26, 6/19/17 Pruitt Dep. at 127:21-129:4.]  But Pruitt admitted that he retrieved the document on March 14, 2017, a week after he first sat for a deposition and was questioned under oath about the dates he had applied for work at MVP.  [*Id.* at 126-127, 6/19/17 Pruitt Dep. at 129:24-130:5.]  Pruitt also admitted that nothing stopped him from retrieving the document before his March 7 deposition.  [*Id.*]  Plaintiffs offered no explanation for his failure to identify and retrieve the document before his first sitting for a deposition, or for his delay in producing it—Plaintiffs waited until the start of Pruitt's second sitting for his deposition, on April 10, 2017 to turn over the document to opposing counsel.  Plaintiffs' motion for reconsideration asks the Court to recast this as Pruitt voluntarily being helpful in the discovery process, but Plaintiffs ignore the problematic timing and circumstances of the retrieval and disclosure, in

addition to Pruitt's less-than-helpful attitude when questioned about the issue during the June 19, 2017 deposition. Even crediting Plaintiffs' view that Pruitt was merely getting his story straight, rather than changing it partway through a deposition, none of the additional facts Plaintiffs point to answer these troubling questions or reassure the Court about Pruitt's ability and willingness to participate in discovery in the way that a class representative is expected to.

4.      Conduct During Depositions

Plaintiffs say that additional context in Pruitt's deposition shows that he is willing to participate fully in discovery, despite standoffish remarks to defendant's counsel. Specifically, Plaintiffs assert that, on reexamination by his own attorney, he "continued the full and truthful response" that he wanted to give to defense counsel. [472 at 15 citing 441-3 at 12, 6/19/17 Pruitt Dep. at 130:3-131:16.] Defendants respond that Pruitt's truthful answers to questions by his own attorney do not make up for an obstructionist attitude during examination by opposing counsel. [475 at 9.]. The Court agrees with Defendants. Pruitt's obligations as a deponent—and even more so as a representative plaintiff acting on behalf of others—were to answer questions truthfully and accurately, regardless of who asked them, and Pruitt's remarks about what questions he should and should not have to answer, even in light of the additional citations Plaintiffs point to, do not give the Court confidence that he would be an adequate class representative.

In sum, even if the Court considered the new citations that Plaintiffs offer, its conclusion would be the same, and the Court's prior order would stand.

D.      Effect on Absent Class Members

Finally, Plaintiffs assert that denial of class certification would have negative effects on absent members of the proposed class. [472 at 23-26.] Plaintiffs also point out that they have evidence of discrimination other than Peterson and Pruitt's personal experiences, namely, a

declaration from someone who previously worked as a dispatcher for MVP. *Id.* Defendants respond that Plaintiffs waived any arguments regarding absent class members by not raising them in briefing on the motion to deny class certification. [475 at 13.] Defendants also argue that the effects of the Court's order on absent class members have nothing to do with whether Peterson and Pruitt are adequate class representatives. [*Id.* at 14.]

Defendants have the better position. This may be a meritorious case, but our system does not allow plaintiffs' counsel to act as private attorneys general and prosecute defendants on their own; cases require real plaintiffs, and class actions require adequate class representatives. Likelihood of success on the merits is no substitute for those requirements. In fact, having a good case may be all the more reason to have good class representatives. Even if the members of the proposed class would benefit from this case going forward, that does not give the Court license to ignore the requirements of Rule 23, and Plaintiffs' argument fails to persuade the Court that it should declare Pruitt and Peterson to be adequate class representatives when the record indicates they are not.

## IV. Conclusion

For the reasons explained above, Plaintiffs' motion for reconsideration is denied. Plaintiffs are given until February 15, 2021 to file a status report stating whether they intend to dismiss the case or proceed individually.

Dated: January 20, 2021

_____
Robert M. Dow, Jr.
United States District Judge

22